ZANE and others *v.* PECK BROTHERS & Co.

*(Circuit Court, D. Connecticut.  August 26, 1882.)*

1. PATENT—INFRINGEMENT—MASTER'S REPORT—PROFITS.
    In this case the defendants used the combination that gave a peculiar value to the patent faucet of the plaintiffs, and they were chargeable with damages in respect to the entire faucet, and the master's report so charging them should be confirmed.

2. SAME—MEASURE OF DAMAGES.
    The measure of damages for infringement of a patent is the profits that the plaintiffs would have made on the sales of the patented article had they supplied the customers to whom the defendants sold such article.

3. SAME—ESTIMATION OF PROFITS.
    In estimating the amount of such profits the cost of manufacture and sale should be deducted, and on sales of a large amount, clerk's hire, storage, freight, etc., should be considered as part of such cost; but in this case, as these expenses would make only a *trifling difference* in amount awarded by master, a reaccounting will not be ordered.

4. SAME—TREBLE DAMAGES.
    In this case, motion of plaintiffs for treble damages should be denied.

*Thomas Wm. Clarke*, for plaintiffs.

*Charles R. Ingersoll*, for defendants.

SHIPMAN, D. J.    The questions now at issue arise upon the defendants' exceptions to the master's report.    The first class of exceptions is, in substance, that the master erred "in charging the defendants with profits and damages in respect of the entire Bate faucet, when they were only chargeable in respect of the particular improvement embodied therein, which had been patented to Jenkins."

The invention was an improved self-closing faucet, and consisted in a new combination of the old devices previously used in faucets of this kind, viz., a screw follower with a quick-threaded screw, valve, and spring.    The combination is a simple one, and the value of the faucet consists in its simplicity and strength, and its consequent fitness for hard, rough usage.    It has gone into extensive use.    The principle of the invention—

"Was a combination of the several parts by which the valve was to be forced to its seat solely by the operation of the spring and the pressure of the water, and the valve was to be removed from its seat solely by the twisting of the handle of the screw-following apparatus. * * * The connection between the screw and the valve must be by contact only, so that when the valve was returned to its seat the spring should do the entire work, and when the valve was forced away from its seat it should be effected by pushing the valve. There could be no rigid connection between the valve and the screw follower or the swivel." *Zane* v. *Peck*, 9 FED. REP. 101.

The defendants took this principle, made at first the plaintiffs' faucet with a swivel, and having been enjoined against such manufacture, made a faucet with the swivel pinned to the screw follower. This infringing device is the one now under consideration.

The faucet consisted in connection with a twisting handle, which is a portion of the screw follower in this new combination of old and common elements. There are no other parts or features in the structure apart from the ordinary induction and eduction way. Other faucets had quick-threaded screws, and valves operated by the screw follower, and probably had their own advantages, but this novel arrangement of all the elements of such a faucet had a peculiar utility which gave it its value and character, and created a wide market. When the defendants took this combination, they took that which had given the Jenkins faucet its value and success, and they took the combination which made the faucet. In this respect the case is unlike *Garrettson* v. *Clark*, 15 Blatchf. C. C. 70, and similar cases.

The remaining class of exceptions is that the master erred in finding that the plaintiffs were damaged by the defendants' infringement, by loss of sales to the amount of $1,615.14, that amount being the profits which the plaintiffs would have made had they supplied the same purchasers. I think that the master was justified by the testimony in finding that but for the infringement the plaintiffs would have made the sales of their faucets to their old customers, which were made to them of the infringing faucets by the defendants, and that the plaintiffs' profits would have been $1,615.14.

The question in this part of the case being as to the loss or damages, in excess of the defendants' profits, which the plaintiffs sustained by reason of the infringement, and the master having properly found that, by reason of the infringement, the plaintiffs lost the specified sales, the damage is fairly estimated by the amount which the plaintiffs would have received for the goods, deducting the cost of manufacture and of sale. In the cost of sale, the store expenses, such as clerk hire, storage, freight, etc., should be estimated upon

sales of any large amount. In this case, in view of the fact that the principal part of plaintiffs' faucets are sold by Mr. Adee, of New York, this class of expenses upon sales of about $3,800 would add such a trifling amount to the existing expenses of conducting the plaintiffs' business, that it is not desirable to subject the defendants to the expense of sending the case back to the master for a reaccounting. The amount, if any, which would be deducted from the $1,615.14 would be very small.

The defendants' exceptions are overruled.

The motion by the plaintiffs for treble damages is denied.