BRENNAN & CO. et al. v. DOWAGIAC MFG. CO.

DOWAGIAC MFG. CO. v. BRENNAN & CO. et al.

(Circuit Court of Appeals, Sixth Circuit. June 18, 1908.)

No. 1,737-43.

**1. PATENTS—INFRINGEMENT—GRAIN DRILLS—PROFITS RECOVERABLE.**

The Hoyt patent, No. 446,230, for a grain drill, is not for an addition to an otherwise complete machine, but is for a combination of elements, some of which are old, to accomplish an improved result, in which each element, whether new or old, is an essential part of the invention, and the liability of an infringer who has appropriated the combination as a whole is not limited to the profit made on any particular element, but extends to the profit made on the entire machine.

**2. SAME—LIABILITY OF INFRINGER—CONFUSION OF PROFITS.**

Where no other invention inheres in a patented combination, and it is not merely for an improvement, but for a new structure, an infringer who has deliberately copied such structure cannot avoid liability for the entire profits made thereon by adding improvements of its own, which do not materially add to its sale value, and by so conducting its business as to make it impossible to separate the profits due to each.

**3. SAME—ACCOUNTING.**

On an accounting for profits by an infringer, the measure of recovery is the amount of profits actually made by the defendant by the sale of the patented device, and it is immaterial that such sales would probably not have been made by complainant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 566–576.

Accounting by infringer of patent for profits, see note to Brickill v. City of New York, 50 C. C. A. 8.]

**4. CORPORATIONS—LIABILITY OF OFFICERS OF CORPORATION—INFRINGEMENT OF PATENT.**

Where the officers of a corporation have been joined as defendants with the corporation in a suit for infringement, objection to the sufficiency of the proof to hold them personally liable should be made on the hearing; but where they have been adjudged to infringe, and it appears that such infringement was only as officers, and not individually, they should be charged only with nominal damages.

Appeal from the Circuit Court of the United States for the Western District of Kentucky.

F. L. Chappell, for Dowagiac Mfg. Co.

Border Bowman and P. A. Staley, for Brennan & Co.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This case comes here on an appeal and a cross-appeal from a decree rendered by the court below on an accounting for profits and damages sustained by the plaintiff, the appellant in the second of the above entitlings, resulting from the infringement of letters patent No. 446,230, granted to Hoyt February 10, 1891. The patent was sustained in respect to the claims relied upon by this court at the original hearing in 1903 (127 Fed. 143, 62 C. C. A. 257, reaffirming a like decision made in the case of Same Plaintiff v. McSherry Mfg. Co., 101 Fed. 716, 41 C. C. A. 627). We expressed the opinion that the patent embodied a highly meritorious invention, and, finding that the defendant had infringed it, decreed accordingly and remanded the cause for an accounting for the profits and damages accruing from the infringement, which appeared to have been going on for several years. The court below, on entering the decree directed by this court, ordered a reference to the master to take proofs and report in the matter of profits and damages. The proceedings before the master were very much protracted, and a large volume of evidence taken, much of which the court below thought was useless; all which, to counsel, seemingly had some bearing upon the subject was brought in. The result is that the master has reported, and the court has decreed, that the plaintiff is not entitled to recover anything beyond nominal damages. This seems an untoward ending of an apparently good cause. Congress has exercised much solicitude in securing to patentees the reward which it bestows for useful inventions. It has awarded a remedy for the profits made by an infringer, as well as the damages sustained by the patentee; and it has further provided that, in cases where the court thinks the facts warrant it, the actual damages may be increased to the extent of threefold. Rev. St. §§ 4919, 4921 (U. S. Comp. St. 1901, pp. 3394, 3395); Walker on Patents (4th Ed.) § 568.

The question we have to consider is whether the result is such as the law and the circumstances require. The master made an elaborate report, especially in regard to the law which he conceived to be applicable. With regard to the facts he states that, in response to an order made by him for a report in respect of the matter of the accounting, the usual course of proceeding (2 Bates Fed. Eq. Pro. § 759), the defendant reported, and its chief officer testified:

"That during the infringing period, in addition to the manufacture of shoe grain drills, it was engaged in the manufacture of numerous other agricultural implements and farm machinery; that the cost of production of the infringing shoe grain drills was so interwoven and intermingled with the cost of manufacture of said other farm implements and machinery that it would be impossible to separate the one from the other; that it kept no separate cost account or expense record as to its shoe grain drill business, and it would be an impossibility for any one to ascertain from its books the profits, if any, derived from the sale of the shoe grain drills which employed complainant's device."

He thereupon further reports as follows:

"No statement of profits or loss being produced by the defendant, the complainant placed its own expert, Mr. Hart, at work upon the defendant's books, and he has produced, and filed as a part of his deposition, a statement showing that during the infringing period, viz., from August, 1894, to March, 1903, the defendant manufactured and sold 9,406 shoe grain drills, embodying complainant's patent, for the gross sum of $504,094.26, and upon which it realized a net profit of $16,992.55. The methods employed by complainant's expert in arriving at his results have been criticised by defendant's counsel, and they have endeavored to point out many fundamental errors in his work. The defendant, however, not only declined to undertake this task when urged so to do, but has absolutely failed to indicate any other method than that pursued by Mr. Hart which would have arrived at a more nearly exact result; nor has it undertaken to have its books reviewed by its own expert, for the purpose of showing that the profits indicated are excessive. Absolutely mathematical exactness in work of this character is not to be expected. I am of the opinion that the method pursued by the expert was in the main correct, that his work was carefully and honestly performed, and that from the evidence presented we must accept his result, viz., $16,992.55, as the net profit accruing to defendant from the sale of infringing shoe grain drills during the period of the accounting."

With respect to profits, he states the contentions made before him by the parties thus:

"The complainant claims that it is entitled to the entire profit thus derived, and bases its contention, as I understand it, on two grounds: (a) That the Hoyt patent is not a patent for a portion of a grain drill only, but embraces the machine in its entirety. (b) That, if the patent should be construed as not sufficiently broad to cover the entire machine, then it is of such paramount importance that the entire market value of the grain drill is legally and properly attributable to the addition of complainant's patented features. Both of these propositions are strongly controverted by the defendant, and they contend that the complainant, having failed to give evidence tending to apportion the profit derived from the whole grain drill and that derived from the use of the infringing device, is entitled to recover only nominal damages."

He then proceeds to discuss the law touching the recovery of profits, and upon his conclusion of law in that regard, that the plaintiff was bound to distinguish the extent to which the Hoyt invention enhanced the profits made by the defendant in the manufacture and sale of the infringing drills, and his further statement that the plaintiff had failed to do this, he reported that there could be only a nominal recovery. The master seems to have appreciated the injustice of this result, for he says:

"That defendant derived some advantage from the use of complainant's device is evidenced by its prolonged infringement. That complainant should not be compensated for the appropriation of its property does not accord with our ideas of justice. To award the entire profits would be to disregard the law and the evidence as I find it; and, no satisfactory basis for an apportionment of the profits being indicated, the complainant is relegated to nominal damages, which I fix at the sum of $1."

And, as some atonement, he finds at the conclusion of his report as follows:

"Being of the opinion that defendant has profited by the infringement, but that the means of ascertaining the quantum are not presented by the record, I find that all items properly taxable as costs should be paid by it."

The fundamental proposition on which the report in respect to the profits rests is that the whole of Hoyt's invention and patent resides

in the spring pressure device and does not extend to other parts of the drill. From this he concludes that only this particular of the drill can be considered in estimating the profits, and that all the other parts might be lawfully made and sold by the defendant without any responsibility to the plaintiff. This is a specious argument; but it is not in accord with the established principles of law regarding patents on claims for combinations of several elements, and, when applied to this case, results in a radical error. The claims of the patent in suit are not restricted to single things, but some of them—the first, for instance—include the several elements which go to make up the seeding part of a drill, in combination. It covers them all as one whole. Every one is made material by including it in the combination. The spring devices are not thereby patented. For the purposes of the claim and the patent thereon, they are on the same footing with all the other parts of the drill, however old and common they may be. Any one might make and sell each and every part, or any lesser or larger combination of such parts, including the spring device, without infringing the patent, provided, of course, they are not intended to contribute to the making up of the entire combination covered by the patent. But one part in a combination is no more patented than another. All in association are patented.

The parts of a drill consist of a carrier, a seed box or reservoir, and the seeding apparatus. It is to the latter that the attention of inventors has been principally directed. The carrier and the seed box are old and simple. Of them it is enough to say that no one appears in this case to have any patent on them. It is pertinent to cite what was said by Mr. Justice Grier in Seymour v. McCormick, 16 How., at page 488, 14 L. Ed., at page 1024:

"It must be apparent to the most superficial observer of the immense variety of patents issued every day that there cannot, in the nature of things, be any one rule of damages which will apply equally to all cases. The mode of ascertaining actual damages must necessarily depend on the peculiar nature of the monopoly granted."

The case here is not a patent for an improvement upon another article, which does not cover that other article, but only the improvement made upon it. The patentee cannot in such case extend his invention over the thing improved, if the latter is patented. If not, he may appropriate it, as others of the public may. The distinction is well illustrated by the improvement of the harvester by adding a driver's seat to an otherwise complete harvester in Seymour v. McCormick, 16 How. 480, 14 L. Ed. 1024. When, therefore, the defendant sold one of the plaintiff's machines, he sold that which in all its associated parts was covered by the patent; and a Dowagiac drill, without the Hoyt patented combinations, would be but the fragment of a drill and have no distinctive character. The invention was not an addition to an otherwise complete machine.

In the cases of Elizabeth v. Paving Company, 97 U. S. 126, 24 L. Ed. 1000, and Hurlbut v. Schillinger, 130 U. S. 456, 9 Sup. Ct. 584, 32 L. Ed. 1011, no doubt the material employed, the blocks, the sand, the gravel, the cement, could have been put down in the usual way in some other fashion, and have been of some value as a pave-

ment, but not to the extent of excellence that one laid according to the patent would have been. Indeed, the records in both those cases show that former patents had taught how this might be done. But the patents then before the court did not adopt some earlier method of paving and then add an improvement, but they pointed out a new way of organizing the materials, which was to be substituted for the old way; and the court held in each case that the owner of the patent was entitled to recover the profits made by building the pavement in the new way. In the latter of those cases Mr. Justice Blatchford, who formulated the rule laid down in Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, delivered the opinion, and cited that case. He evidently regarded the language employed in the second alternative of the rule there stated as the statement of a broad principle, which would be applicable to cases not covered by the first.

We therefore think that the plaintiff was entitled to recover the profits made on the infringing machines. But this is not the only ground on which a decree for those profits should be justly awarded to the plaintiff. The case is not one where the defendant has inadvertently infringed the rights of the patentee. On the contrary, the trespass has been with full knowldge of the plaintiff's patent, which it knew was presumptively valid. It has made and sold these infringing drills with a purpose to imitate the patentee's construction. If it made any profits in this business, which were attributable to any contribution of its own, it has mingled them with the profits due to the plaintiff. It took no precaution for distinguishing the profits, and took such a course as to make them indistinguishable by any means which the plaintiff could pursue; and it now declares that it cannot itself distinguish them, and rests its defense upon the impossibility of showing the actual portion of the profits to which the plaintiff is entitled. This is the infringer's refuge, and in so many cases renders fruitless the patentee's right to redress for an undoubted wrong. In Docker v. Somes, 2 Myl. & Keene, 674, Lord Chancellor Brougham, when confronted with such a defense in a case involving an accounting by a trustee, said:

"When did a court of justice, whether administered according to the rules of equity or law, ever listen to a wrongdoer's argument to stay the arm of justice grounded on the steps he himself had successfully taken to prevent his iniquity from being traced? Rather, let me ask, when did any wrongdoer ever yet possess the hardihood to plead in aid of his escape from justice the extreme difficulties he had contrived to throw in the way of pursuit and detection, saying, 'You had better not make the attempt, for you will find I have made the search very troublesome?' The answer is, 'The court will try.'"

In the present case the infringer's conduct has been such as to preclude the belief that it has derived no advantage from the use of the plaintiff's invention, as the master well said. In these circumstances, upon whom is the burden of loss to fall? We think the law answers this question by declaring that it shall rest upon the wrongdoer, who has so confused his own with that of another that neither can be distinguished. It is a bitter response for the court to say to the innocent party, "You have failed to make the necessary proof to enable us to decide how much of these profits are your own;" for the par-

ty knows, and the court must see, that such a requirement is impossible to be complied with. The proper remedy to be applied in such cases is that stated by Chancellor Kent in Hart v. Ten Eyck, 2 Johns. Ch. (N. Y.) 62, 108, where he said:

"The rule of law and equity is strict and severe on such occasion. If a party having charge of the property of others so confounds it with his own that the line of distinction cannot be traced, all the inconveniences of the confusion is thrown upon the party who produces it, and it is for him to distinguish his own property or lose it."

This, also, was a case of an accounting by a trustee. And in a proceeding against an infringer for profits, the defendant may not inaptly be regarded as a trustee de son tort. Wales v. Waterbury, infra. And see also Wyllie v. Ellice, 6 Hare, 505; Bailey v. Bailey, 67 Vt. 494, 32 Atl. 470, 48 Am. St. Rep. 826. As was said on a former occasion, the obligation cast on the party causing the confusion cannot be less when, instead of being intrusted with the possession of property, he takes possession of it wrongfully. P. P. Mast & Co. v. Superior Drill Co., 154 Fed. 45, 57, 83 C. C. A. 157. The rule is of general application. It is stated with equal emphasis by Mr. Justice Strong in The Idaho, 93 U. S. 575, 586, 23 L. Ed. 978, where Hart v. Ten Eyck was cited as authority for it. In Wales v. Waterbury, 101 Fed 126, 41 C. C. A. 250, it was invoked by the Court of Appeals for the Second Circuit as applicable to the accounting for profits in a patent cause, as it was also by this court in the above cited cause of P. P. Mast & Co. v. Superior Drill Co.; Providence Rubber Co. v. Goodyear, 9 Wall. 788, 803, 19 L. Ed. 566. The rule has been recognized by this court in several cases, among them Smith v. Township of Au Gres, 150 Fed. 257, 80 C. C. A. 145, 9 L. R. A. (N. S.) 876, and Smith v. Mottley, 150 Fed. 266, 80 C. C. A. 154, in which last case we referred to a number of cases in other jurisdictions as well as our own.

We do not by any means impugn the general rules laid down in Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, and the cases which have followed it, one of which is that, when the infringement consists in the making or using of articles improved by his own invention, the plaintiff must prove the extent of the enhancement of profits by the use of his own, as distinguished from those due to the article improved. But we are of opinion that the circumstances of this case, first, in that in the patented combination no other invention inheres, and that the combinations are not for improvements merely, but substitutes for essential congeries in a drill, and, secondly, that the infringement has been so conducted as to render a distinction of profits impossible, are controlled by principles quite independent of those involved in Garretson v. Clark, and that the plaintiff was entitled to a decree for the profits of the sales of the infringing drills. There is in this case no such real hardship as should shock the conscience of the court. The defendant loses nothing of importance but the profits which it made in the infringing business. It sometimes used some improvements of its own, but we are satisfied that they were of trifling value.

The master, for the purpose of this inquiry, made extensive reference to other kinds of drills and their relative satisfaction to the

public, the numbers of each that were sold in the territory where this infringing took place as compared with the sales of the plaintiff's drills, and seems to suppose that this had a bearing upon the question he had before him in regard to the profits to which the plaintiff was entitled. But we do not perceive its relevancy. What the plaintiff was seeking, and what the master was trying to find out, was the actual profits on the particular drills which contained the plaintiff's invention and which were made or sold by the defendant. What other drills the defendant made or sold, or what other drills were sold of other makes by other parties, was a wholly irrelevant matter. So the comparative number of its own drills which the plaintiff was able to sell in competition in the same territory, or whether it sold any at all, was a wholly indifferent matter. A patentee may withhold the exploiting of his patent in a particular territory, or he may not be able at the time to extend his business therein. But this gives no right to an infringer to invade the territory and anticipate the sales which the patentee might make when he should desire and be able to carry his invention there for a profit which is legitimately his own. But this, while it might be an answer to the suggestions made by the master, is not relevant to such a proceeding as this. The fact that the owner of a patent does not exercise his right, or cannot at the time do so to the full, gives no license to another, and the latter is liable for infringement, to the same extent as if the owner were exercising his right to the utmost. The owner has the same right as he has to any other property, which he may put to use or not as he chooses; and in such case the rule always is that, if a stranger without right seizes and uses it, he is bound to pay for such use, and it is no answer for him to say that the owner was doing nothing with it. If it be true, as has often been declared, that the exclusive right of a patentee is property, for the protection of which the public faith is pledged, it should have the same immunity from invasion, and its violation should be attended with the same consequences as in the case of other species of property. Wilson v. Rousseau, 4 How. 646, 674, 11 L. Ed. 1141; Grant v. Raymond, 6 Pet. 218, 241, 8 L. Ed. 376; Bement v. National Harrow Co., 186 U. S. 70, 88, 22 Sup. Ct. 747, 46 L. Ed. 1058; Heaton-Peninsular Co. v. Eureka Specialty Co., 77 Fed. 288, 25 C. C. A. 267, 35 L. R. A. 728, 46 U. S. App. 146.

This patent and the Packham patent, which is the subject of another decision made concurrently with this (Dowagiac Manufacturing Co. v. Superior Drill Co., 162 Fed. 479), relate to one of the most important kinds of machinery employed in one of the great industries of the country—that of seeding grain. At the time when their infringement was going on, we are satisfied, from the records in the cases, the Hoyt shoe drill and the Packham disc drill were leading implements in the work of seeding grain in a wide extent of territory and have had their value attested by the numerous infringements which the patents have suffered. They may to some extent have since then been improved upon, and their value diminished by the progress which has taken place in most of the mechanic arts, and the time for reaping the reward for their inventions is spent. But this only en-

hances the obligation of the courts to find a way, if it be possible, to redress the wrongs done by those who have been willing to gather the fruit into their own basket. There is some evidence in the record which bears upon the subject of damages; but as we infer from the discussion in the appellant's brief, the claim for damages, as distinct from profits, is not intended to be urged, we do not consider that subject.

The decree should be reversed, with the costs of this court, and a decree entered for the complainant in the sum of $16,992.55, with interest from the date of filing the master's report.

There is a cross-appeal, on which the individual defendants assigned error because, as they say, there is no proof that they personally infringed. This is an objection which should have been advanced at the original hearing. It was then decreed that these individual defendants infringed the patent. But it was not determined to what extent the several defendants infringed. It not being shown that these individuals personally interfered in the infringement, or otherwise than as corporate officials, we think they should be charged with nominal damages of $1 only; and it is ordered that the decree as to those defendants be modified accordingly. The defendants Brennan & Co. on the cross-appeal assign as error that the court below should not have awarded the costs of suit against them. If the decree upon the merits were sustained, it would seem that taxing the costs of the suit to the defendant, the decree having been in its favor, was erroneous. It is, however, to be reversed, and the motive which led the court to charge the defendants with costs no longer avails. But the difficulty we encounter is that, while the introduction of some of the testimony seemed to the court below useless and unnecessary, the record made on this appeal does not show to what part of the testimony this criticism of the court was directed, nor furnish us the means of distinguishing between what was pertinent to the inquiry before the master and what was not. If counsel intended to press this objection here, they should have seen to it that the record should contain the data needed to decide it.

We see no alternative but to overrule it, and in this respect affirm the decree of the Circuit Court.