### YESBERA v. HARDESTY MFG. CO.

### HARDESTY MFG. CO. v. YESBERA.

(Circuit Court of Appeals, Sixth Circuit. December 23, 1908.)

Nos. 1823, 1824.

1. PATENTS (§ 312\*)—SUITS FOR INFRINGEMENT—PROFITS—EVIDENCE.
Where, on an accounting for profits for infringement of a patent, the·
defendant fails or refuses to produce his books as ordered by the court,
from which the extent of the infringing sales might be ascertained, every
doubt should be resolved against him, and the court is justified in act-·.
ing on less definite and certain evidence. In such case testimony of em-
ployés of defendant who are able to state approximately the number of
infringing articles made and sold each year during the time of infringe-
ment may properly be made the basis of a decree.
[Ed. Note.—For other cases, see Patents, Dec. Dig. § 312.\*]

2. PATENTS (§ 318\*) — SUITS FOR INFRINGEMENT — PROFITS—ENTIRE OR PARTIAL
PROFITS.
The rule that, where a patent is for an improvement to authorize the
recovery of profits from an infringer, the owner must separate or ap-
portion the profits made by defendant between the patented feature and
the unpatented features, does not'apply to a patent for a combination as
a unit in which the parts co-operate.
[Ed. Note.—For other cases, see Patents, Cent. Dig. § 572; Dec. Dig. §·
318.\*
Accounting by infringer for profits, see note to Brickill v. City of New
York, 50 C. C. A. 8.]

3. PATENTS (§ 312\*)—SUITS FOR INFRINGEMENT—DAMAGES—SUFFICIENCY OF EVI-
DENCE.
Complainant sold articles made under its patent at $2 each, and defend-
ant made and sold infringing articles at $1.70 each. In a suit for in-
fringement the reasonable cost of producing and marketing each article
was determined, and the difference between such cost and $1.70 was
awarded complainant as profits made by defendant. *Held*, that it could·
not be assumed from such facts that but for defendant's infringement com-
plainant could have supplied the same customers at a price exceeding $1.70,
so as to entitle it to damages in addition to the profits allowed.
[Ed. Note.—For other cases, see Patents, Dec. Dig. § 312.\*]

Appeals from the Circuit Court of the United States for the North-
ern District of Ohio.

Almon Hall, for Yesbera.

Wilbur Owen, for Hardesty Mfg. Co.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. These are cross-appeals taken from the
final decree of the Circuit Court in a patent case which has been twice
before this court, first on appeal from a decree dismissing the bill on

demurrer, upon the ground that the patent was invalid, 111 Fed. 386, 19 C. C. A. 397, when the decree was reversed, and again on appeal from a decree dismissing the bill at the hearing on pleadings and proofs on the same ground as before, 133 Fed. 916, 67 C. C. A. 210, when the patent was held valid and the decree reversed. The cause was remanded with directions to enter a decree for the complainant, and an ascertainment of the profits and damages to which the complainant was held entitled in consequence of the infringement of which the defendant was adjudged guilty. The decree which we ordered was entered, and a reference to the master to take an account of profits and damages was included in the decree. The result of the reference was a report from the master filed May 28, 1907, and a supplemental and final report filed June 7, 1907, from which it appears that the master found the complainant entitled to recover profits in the amount of $2,673.12, but nothing for damages. Exceptions to the report were taken by each of the parties, all of which were overruled by the court, as was also a motion made by the complainant, upon the provision of the statute in that regard, for an increase of the sum which should be found due by the court for damages. A decree was passed conforming to the master's report. The complainant's contentions are, in substance, that the court below erred in that it did not decree an adequate sum for profits; that the court erred in allowing an excessive commission to defendant's agents for making sales; and that the court erred in not allowing the complainant substantial damages, and in not awarding an increase thereof. The defendant complains that the court allowed any profits whatever to be recovered. The contention of the defendant is related to that of the complainant that the allowance for profits was too small; and they make but one topic.

By the order of reference, the defendant, his attorneys, agents, clerks, etc., were directed to attend before the master, and to produce before him such account or business books, papers, vouchers, and documents as the master should require. It appears from the master's report that upon the opening of the proceedings before him the master, on motion of counsel for the complainant, ordered the defendant to produce the books and papers mentioned in the court's order. The order not being complied with, a subpoena duces tecum issued directed to the defendant requiring him to appear forthwith and bring with him "all books, papers, and cards and written records then existing, involving in any wise automatic stools made and sold in infringement of the complainant's patent." The defendant did not appear, but instead his bookkeeper came, and produced a package of account cards, and a statement of sales, all relating to sales made during the first 10 months of 1904; and he testified that these were all the records they had of the infringing sales, and that they could find no records going back of 1904. The infringement complained of extended from the year 1898 to the end of 1904. This suit was begun on April 12, 1899. And, there being no restraining order against him, the defendant continued the business until the final decree was pronounced by this court sustaining the patent. Notwithstanding the representations made and sworn to by the defendant and his bookkeeper that the ac-

count cards produced as above showed all the sales made during the 10 months of 1904, and that they amounted to only 565 stools, the complainant's counsel was able from these and other sources to prove that during that year there had been actual sales to the number of 1,171, and the master so finds, adding that "there may have been a much greater number of such stools made and sold in 1904 and each of the preceding years, but, on account of the nonproduction of the books and accounts of defendant or other satisfactory evidence, no accurate statement can be made by the master." It is evident that the master believed, what no one else could help believing, that the defendant's books, if produced, would prove what number of stools the defendant had sold, or that, if no record of any kind had been kept, it must have been for the purpose of concealment and making the proof of the extent of the infringement difficult, if not impossible. It was shown by those in the employment of the defendant, among them a bookkeeper, that books had been kept, but were lost or had been destroyed; but no one testifies how or when they could have been lost or destroyed. The guarded and vague replies of the defendant and his bookkeeper to questions put to them in regard to the books and records kept in the business must have been unsatisfactory to the master, for though in his first report he was charitable enough to say that he was not disposed to charge them with dishonesty, yet in his final report he says:

"Since the filing of my draft report, I have re-read all the testimony and reconsidered it. At the time I filed the report, I was desirous of arriving at a conclusion that would not reflect upon the honesty and integrity of witnesses, but I am now forced to the conclusion that the books, cards, and records that would be the best evidence of the number of automatic stools sold and the prices received have been willfully withheld. Mr. Ellsworth, the bookkeeper, protests that he does not know of any destruction of such evidence, and very adroitly avoids an opinion as to the whereabouts of the books; but I am convinced, and so find, that if he does not know where these documents are, he knows the name of the person who does know, and that their production was possible at any time during the inquest as to profits, if Mr. Yesbera had so ordered."

And if the books had not been lost or destroyed, in proof of which there was nothing but the vague suggestions of these witnesses, no one who reads this record could fail to agree with the master in his final conclusion. The master's report of the proceeding before him fills 230 or more pages of the printed record, and shows a long but unavailing endeavor to elicit from the defendant the proof which would have made it easily possible for the master to make a right and just report upon the subject of the reference. It may be that more stringent measures might have been taken to enforce the order of the court, if, as the master believed, the defendant had the control of the missing books and records. But the defendant cannot complain of that. His failure or refusal to produce the most satisfactory evidence leaves his case exposed to the presumption that if produced it would tell against him, and compels the court to rely on the less definite and certain evidence which the record may supply. This is a rule by which the courts are governed. If they fail to observe it, the rights of parties may utterly fail of protection.

Authority for these views is found in many decisions. In Rubber Company v. Goodyear, 9 Wall. 788, 19 L. Ed. 566, the manner of doing business by the infringer is described by the court at 9 Wall. 802, 19 L. Ed. 570, where it is said:

"The Providence Company manufactured articles covered and not covered by the patent in question. No separate account was kept as to their respective cost and profit. The business as to both was so intermingled and confused that approximate results only were possible; and these were attainable by but one process."

And the process approved was based upon the assumption that the profits on the patented articles were the same as those on the unpatented articles. There was no proof that they were exactly the same, but that afforded the best basis for an approximation that could be found in the record. Then (9 Wall. 803, 19 L. Ed. 571) the court, by Mr. Justice Swayne, referring to the defendant's contention that there should be a deduction of the profits on unpatented articles, said:

"He [the master] refused to allow the profits due to elements not patented which entered into the composition of the patented articles. There may be cases in which such an allowance would be proper. This is not one of them. The manner in which the books of the Providence Company were kept renders such an account impossible as to the business done in their name. The conduct of the defendants in this respect has not been such as to commend them to the favor of a court of equity. Under the circumstances, every doubt and difficulty should be resolved against them. The allowance was properly denied"—citing Lupton v. White, 15 Ves. 432, and other cases.

Lupton v. White was also cited as one of the authorities on which Chancellor Kent affirmed the same principle in Hart v. Ten Eyck, 2 Johns. Ch. 62, 108. We have applied it to cases of accounting for profits in patent infringements in which there had been inequitable conduct in the management of the infringer's business or in withholding the evidence in his control which would most certainly prove the extent of his infringement. P. P. Mast & Co. v. Superior Drill Co., 154 Fed. 45, 57, 83 C. C. A. 157; Brennan & Co. v. Dowagiac Mfg. Co. (C. C. A.) 162 Fed. 472; Dowagiac Mfg. Co. v. Superior Drill Co. (C. C. A.) 162 Fed. 479. To the same point is Wales v. Waterbury, 101 Fed. 126, 41 C. C. A. 250, of the Second Circuit, a patent case. Other cases decided upon the same principle are cited in Brennan & Co. v. Dowagiac Mfg. Co., supra.

Of course if, in the absence of the better proof, there is still nothing of substance left on which the court can lay hold, there is no help, and the plaintiff must endure his loss. In the present case, however, there was evidence from which the number of stools sold and the profits made could be estimated with a degree of probability which would approximate the true amounts, and, if the master had fixed upon some seemingly safe minimum, there would have been some approach to justice, and really more indulgence to the defendant than he was entitled to have. Mr. Milner, the former president of the complainant, testified that about April 1, 1899, he was in the office of the defendant, and the bookkeeper showed him the order book indicating the number of stools then sold since August, 1898, when the defendant commenced the business, and found it to be between 6,000 and 7,000. This would indicate a rate of at least 9,000 per annum. There was evidence tend-

ing to show that the number of sales made was increasing rather than diminishing during the continuance of the infringement, which was more than five years. Three employés of the defendant· who had been engaged, two of them at least, nearly the whole time of the infringement, in the manufacture of these stools, testified that they could give an approximate estimate of the number which passed through their hands, and the number given by one of these two witnesses for five years was 31,768, and that by the other for five years and three months was 32,134. A third witness worked about half the time, and was engaged in finishing and striping the stools; and his estimate of those passing through his hands for this half the time was 15,557. In the circumstances it would seem that this was the only available testimony which the complainant could supply. Counsel for defendant denounces it as wild, reckless, and altogether unreliable proof, hardly worth considering. But the defendant could have easily refuted it by producing his books if he had been so minded, and these the complainant was ready to accept. We think the master erred in declining to regard the testimony which the complainant adduced in regard to the extent of the sales. It seems to us the kind of evidence which the rule accepts, where the better evidence is suppressed or destroyed by the defendant. There was sufficient evidence of the cost of production and making sales, and of the prices at which they were sold.

Counsel for defendant states that he "has felt that the presence or absence of defendant's records was immaterial until such time as the complainant had, under the well-settled rules in cases of this character, produced some evidence as to whether it was entitled to recover anything at all." But this opinion, whatever might be its effect upon the recovery of punitive damages, could not relieve the party from his obligation to comply with the order of the court to produce his books or lessen the effect of his withholding the best evidence upon the right of the other party to produce the best obtainable. The view of counsel above expressed seems to have been entertained throughout, and perhaps the defendant's conduct may be in part explained by it. While we do not doubt its sincerity, we are bound to say that we think it an entirely erroneous opinion.

Counsel relies upon the case of Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, to support the conclusion which he states as follows:

"The action of the court in rendering judgment against defendant for any amount whatever, in the total absence of any evidence even tending to show that the defendant has made any profits growing out of his use of the patented invention, as distinguished from that part of the device which belonged to the public, was clearly erroneous and should be reversed."

The unanimity with which infringers seek the shelter of that case is something remarkable. But it is a misconception to suppose that it has any application to a case like this, as must be seen·upon a due consideration of it. It was a case founded on patents for improvements "in the method of moving and securing in place the movable jaw or clamp of a mop-head," as Mr. Justice Field puts it. To·be· more precise, it was for the provision of a nut to be connected with the collar of the movable clamp and adapted to move up or down on the

threaded shank of the handle. And, as the learned justice says, "with the exception of this mode of clamping. mop-heads like the plaintiff's had been in use time out of mind." Then he proceeds to state the rule so often cited:

"When a patent is for an improvement, and not for an entirely new machine or contrivance, the patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance. He must separate its results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated. The rule on this head is aptly stated by Mr. Justice Blatchford in the court below: 'The patentee,' he says, 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative: or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.'"

Thus it is seen that what he is speaking of is a patent for an improvement, and not of an entirely new machine or contrivance, and its application to the latter is further excluded when he speaks of the apportionment "between the patented feature and the unpatented features." Now when we remember that there are two classes of patents, one for simple elements, and another for combinations of elements, and the distinguishing characteristics of the two classes, it is readily seen how impossible it is to apply this language to the other class of patents than those of the class specified. In a combination patent there are no unpatented features in the sense that they are separable from patented ones, and no one of the elements is patented. They may all be old and not patentable at all unless there is some new combination of them. The point to be emphasized is that the law looks not at the elements or factors of an invented combination as a subject for a patent, but only to the combination itself as a unit distinct from its parts, and in such case there could be no comparison of patented and unpatented parts.

On the other hand, an improvement presupposes something already existing and which would remain if the improvement were to be taken off. In such a case there would be little difficulty in finding the value of the former structure, if it had any, and comparing it with the improvement added; and of course the difference would be the value of the improvement. Such a case was Garretson v. Clark. Another good illustration is the case of the harvester improved by the driver's seat, in Seymour v. McCormick, 16 How. 480, 14 L. Ed. 1024, to which we referred in a former discussion of this subject. By parity of reasoning, if the combination were in itself but part of the structure in which it is located, the question would be upon a comparison of the value of the other parts without the patented combination and the value of all the parts assembled in a structure. This distinction was referred to by us in the case of Brennan & Co. v. Dowagiac Mfg. Co. (C. C. A.) 162 Fed. 475. But it was not new. It was distinctly implied, if not expressed in Garretson v. Clark. It had been made the basis of decision by Judge Wheeler in Ruggles v. Eddy, 2 Ban. &

A. 627, Fed. Cas. No. 12,116; by Judge Shipman in Zane v. Peck (C. C.) 13 Fed. 475, distinguishing Garretson v. Clark; by Judge Colt in Fifield v. Whittemore (C. C.) 33 Fed. 835, and by Judge Wales in Creamer v. Bowers (C. C.) 35 Fed. 206. It seems to us that this distinction would, if attended to, go far toward relieving the embarrassment which has sometimes been encountered from the assumption that the rule laid down in Garretson v. Clark applies to the infringement of patents of all descriptions.

In the case at bar, the object of the invention was to provide a seat in front of the counter, which, when not in use by customers, would automatically rise up to the counter in front of it, and which could be easily moved back to its place by the hand when wanted for use; and it was patented as for a combination of all the parts of a counterseat assembled in the manner described in the specifications and claims. And the master was right in so construing our former opinion in this case. And it follows that all discussion founded upon the idea that Milner's invention consisted merely of the provision of the spring D and the rest "d" is without profit and misleading. It is true that we said in the opinion, reported in A. R. Milner Seating Co. v. Yesbora, 133 Fed. 916, 67 C. C. A. 210, that "the controversy in respect to the validity of the patent seems to be narrowed to the provision, and particularly to the location of the spring D and the rest 'd.'" And so it was. But the novelty of every combination must depend in large measure upon the novelty of the elements of which it is made up and each is, and must be, a co-operating element whose characteristics affect the other associated elements. A new element makes a new whole, and it was for the purpose of demonstrating the novelty of the stool that the observation cited was made. And the pointing out of the particular novel feature of one or more of the factors should not have misled any one into the supposition that we regarded the invention as one consisting wholly of these features, and that only those were infringed and to be considered in the estimate of damages or profits.

We think the cross-appeal of the defendant below should be dismissed with costs, and that on the appeal of the complainant the decree of the court below should be reversed and the cause remanded, with costs to the complainant. It remains to be determined what judgment should be directed to be entered in the court below. From the testimony of the defendant's employés in regard to the sales during the last five years of the infringement, and the testimony of Milner in regard to the period prior thereto, and the findings of the master in regard to the comparative number of sales in each of the several years, we conclude that a reasonably safe estimate of the number of sales made by the defendant during the whole period would be that there were at least 36,000. The master finds that the profits amounted to 36 cents on each stool. From the evidence we judge that justice was much tempered by this finding; but we shall let it pass, because of the latitude which the law accords to the master in respect to findings of fact. The result is that the complainant is entitled to recover as profits

the sum of $12,960, to which is to be added a sum resulting from the correction of an error next to be considered.

The complainant urges that, whereas the master allowed 33⅓ per cent. for agent's commissions on sales, the testimony fairly showed that not more than 25 per cent. was actually paid. The testimony upon this subject was the oral evidence of the defendant himself, who left his books behind. His testimony, first and last, ranged from 15 per cent. to 33⅓. We cannot help thinking that, in the circumstances of this case, the master cannot be justified in this finding by the rule before adverted to. The allowance was excessive and must be reduced. We agree with the contention of counsel for the complainant that not more than 25 per cent. should have been allowed. The result of this reduction of expenses would be to increase the profits by 8⅓ per cent. of the price for which the stools were sold. It is fair to assume that the expense of selling, if otherwise than on commission, would be about the same as if by agents so paid. Ordinary business economies would indicate this. From the findings of the master we conclude that the sale price was about $1.70, of which 8⅓ per cent. is 14.25 cents. This, multiplied by the number of stools sold, amounts to $5,130. The sum of these totals, $12,960 and $5,130, is $18,090.

Then as to the subject of damages. The master found that none were proved. The foundation of the claim in that regard is that the complainant's selling price was $2 for each stool of the common size, and about $2.25 for the larger. To the extent of a price of $1.70, the complainant has already been compensated in profits. It might probably be conceded that the plaintiff could have made and sold the stools which the defendant made and sold. But it does not follow that it could have sold them at the price of $2 and $2.25. We cannot assume that the price would have made no difference to purchasers, nor can we assume that any definite number of the purchasers would have bought at the complainant's prices. And with respect to the complainant's contention that it was compelled to sell its own stools at a lower price by the defendant's competition, how can we know from anything appearing in this record that it could have sold them at a higher price than the defendant did, or how much concession below that it was obliged to make in order to sell its own? Let it be assumed that the complainant could have made and sold the same stools as the defendant did and at the same price, for, as we have said, we cannot assume that it could have sold them for more. What has the plaintiff lost? The master has found what the cost of production was, and he has done this, not upon proof of the actual cost to the defendant, but upon the basis of reasonable or probable cost, and this he must have done with due regard to the defendant's facilities, and these are not shown to have been inferior to those of the complainant. And this is the basis upon which the master estimated the profits, and we have allowed them. It is easy enough to state theoretically what should be allowed as profits and what as damages, but in many cases it is practically a difficult matter to draw the line between them, and the present is one of such cases. The law certainly does not permit the duplicating the same elements of damages (we use that term in its generic sense) upon both

grounds for recovery, and, when they have been allowed upon one ground, the court should be careful to see that they are not given upon the other. In fine, we are not able to construct out of the material in this case an independent ground on which a recovery for damages can be based. If there had been no award of profits, we should have found less difficulty in respect to damages. Since the statute permits only an increase of the damages found, and not of profits, it follows that the complainant's motion in that regard falls to the ground.

The decree must be reversed, with costs, and the cause remanded with direction to enter a decree for the complainant in the sum of $18,090, with interest from the date of the filing of the master's final report.