SUNBEAM CORPORATION, Petitioner-Appellee,

v.

GOLDEN RULE APPLIANCE CO., Inc., Respondent-Appellant.

No. 107, Docket 24658.

United States Court of Appeals Second Circuit.

Argued Nov. 22, 1957.

Decided Jan. 30, 1958.

**468**

Thomas J. Burns, New York City (Raphael, Searles, Levin & Vischi, New York City, on the brief), for respondent-appellant.

Alfred P. O'Hara, New York City (Rogers, Hoge & Hills, New York City, on the brief), for petitioner-appellee.

Before HAND, HINCKS and LUMBARD, Circuit Judges.

HINCKS, Circuit Judge.

This is an appeal from a judgment holding the appellant, Golden Rule Appliance Co., Inc., in civil contempt for violation of a consent decree entered in an injunction action brought by Sunbeam Corporation to enforce a claim of unfair competition under the New York Fair Trade Law, N.Y. General Business Law § 369–a et seq. Among other terms, the consent decree forbade Golden Rule from advertising or selling any price-fixed Sunbeam product below the list price set by Sunbeam pursuant to the New York Fair Trade Law.

The judgment below has three main provisions: (1) Golden Rule is to pay Sunbeam $1,000 as a "fine"; (2) Golden Rules is to pay Sunbeam $2,500 as reimbursement for all costs of this litigation including counsel fees; (3) Golden Rule is to pay Sunbeam a $2,500 fine for every future sale of a Sunbeam product in violation of the consent decree.

Golden Rules is a "discount house" located in New York City which sold, among other products, electrical appliances, including some of Sunbeam's. The discount operation is based upon large volume with a comparatively low profit margin upon the individual items. This type of operation, as are other retail operations, is subject to the New York Fair Trade Law, which permits manufacturers of trademarked products in open competition to maintain a desired price level in the state. Sunbeam took advantage of the statute's provisions and duly established minimum prices for the resale of its products in the State of New York. Its conduct in so doing was saved from conflict with the Antitrust Laws of the United States by the Miller-Tydings Act, 15 U.S.C.A. § 1, as supplemented by the McGuire Act, 15 U.S.C.A. § 45.

In June 1954, Sunbeam commenced suit against Golden Rule for alleged violations of Sunbeam's established prices. The consent decree, referred to above, was filed on August 1, 1956. The present proceeding, commenced in January 1957 by the issuance of a show-cause order, is based upon sales made by the defendant in November and December, 1956, at prices below the established resale price. At the hearing several professional shoppers testified to such sales.

Golden Rule asserted several defenses: the alleged sales never occurred; and even if the sales were made they were legal under that provision of New York law which authorizes close-out sales at less than list prices. Further, it is contended that Golden Rule entered into the consent decree upon Sunbeam's representation, not subsequently carried out, that it would repurchase all of Golden Rule's present stock of Sunbeam products.

The judge below found that the proscribed sales had, in fact, taken place as

the professional shoppers had testified. He also found the violations of the injunction to be willful and part of an "intentional sales policy" directed toward a "cold-blooded evasion" of the court's earlier decree. He did not credit Golden Rule's claim that Sunbeam had promised to repurchase its product from Golden Rule. The judgment of contempt followed.

On this appeal, Golden Rule attacks the finding that proscribed sales occurred and the refusal to find an agreement by Sunbeam to repurchase the stock on hand. But if Judge Walsh chose to credit Sunbeam's witnesses, as he did, there was ample evidence to sustain his determinations of fact. Not having been shown to be clearly erroneous, Fed.Rules Civ.Proc., Rule 52(a), 28 U.S.C.A., the findings are sustained.

■ The appellant contends that close-out sales at less than the manufacturer's list price are legal under N.Y.General Business Law § 369–a, subd. 2(a) which states that price maintenance agreements do not apply "in closing out the owner's stock for the purpose of discontinuing delivering any such commodity." There are two answers to this contention; one factual and one legal. The evidence indicated that more than a month after the consent decree was signed Golden Rule received and accepted a shipment of Sunbeam products it had ordered. This tended to prove that Golden Rule was not in fact closing out. Merely posting a sign advertising a "close-out" does not automatically bring all sales within the statutory provision just quoted. However that may be, in New York it seems settled that a close-out sale is no defense to a proceeding for contempt based upon violation of a prior injunction. General Electric v. Big Three Appliance Center, N.Y.L.J., Nov. 1, 1956, p. 7, col. 4; Revere Copper & Brass Inc. v. Harvard Stores, N.Y.L.J., Jan. 14, 1955, p. 8, col. 3; General Electric v. Greeley Appliance Corp., 125 N.Y. L.J. 858 (1951). The proper procedure is for the defendant to request a modification of the earlier decree allowing such a

sale. General Electric v. Goldwitz, N.Y. L.J., April 10, 1956, p. 7, col. 1. Another factor militates against the appellant's contention. The consent decree on which this contempt proceeding is based does not in terms prohibit only such sales as are interdicted by the New York Fair Trade Law but, instead, and without exception, purports to forbid all sales below the fair trade prices as set by Sunbeam.

The appellant's main attack is directed against the three pecuniary provisions of the decree enumerated above. It contends that these, because punitive and confiscatory, have no proper place in a decree for civil contempt.

■ This, to be sure, is a proceeding brought for a civil contempt and, as the appellant says, the authorities plainly hold that such a proceeding is remedial and compensatory, and not punitive. United States v. United Mine Workers, 330 U.S. 258, 304, 67 S.Ct. 677, 91 L.Ed. 884. In Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797, it was stated that in a civil contempt proceeding "the punishment is remedial, and for the benefit of the complainant." It is only in a criminal contempt that "the sentence is punitive, to vindicate the authority of the court." See, generally, Moskovitz, Contempt of Injunctions, Civil and Criminal, 43 Colum.L.Rev. 780; Civil and Criminal Contempt in Federal Courts, 57 Yale L.J. 83; and Civil and Criminal Contempt in Federal Courts, 17 F.R.D. 167.

■ The first pecuniary provision of the decree requires Golden Rule to pay Sunbeam $1,000 as compensation for past violations of the injunction. I agree with Judge HAND that the order for the $1,000 fine cannot stand. I think I should say, however, that I reach the result he indicates by a somewhat different approach. In a Fair Trade case such as this, in which the defendant's violation, without depriving the plaintiff of any sales which it might otherwise have made, has only caused some injury to the plaintiff's good will, I find it difficult to view the defendant's profits as included

in the concept of compensation to the plaintiff. In such cases the relationship between the defendant's profits and "compensation" to the plaintiff seems substantially more remote than in patent infringement cases such as Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389, which Judge HAND cites, in which it is plausible to infer that sales of the patented article made by the defendant would have been made by the plaintiff but for the defendant's wrongful conduct. Restatement, Torts, § 747.

■■ The problem now presented to us is whether, in a contempt proceeding arising from violation of the decree of a federal court in a Fair Trade case, an award of the defendant's profits to the plaintiff may be viewed as "compensatory" relief within the well established federal rule that only compensatory relief may be awarded in civil contempt proceedings. United States v. United Mine Workers, supra; Gompers v. Buck's Stove & Range Co., supra. In the federal contempt cases I find no intimation that the notion of "compensatory relief" differs from that applied by the federal courts in shaping the recovery in patent infringement cases. Leman v. Krentler-Arnold Hinge Last Co., supra. And since our immediate problem relates to the power of a federal court to enforce its decree, even in a diversity case such as this a remedy provided by a State contempt statute is not applicable: we may not give effect to § 773 of the New York Judiciary Law which provides that the plaintiff may recover $250 for each violation of a civil contempt decree even absent proof of damages. Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

However, it now seems established that in trade-mark cases, in which as in Fair Trade cases the plaintiff has suffered injury to his good will, the infringer, like the patent infringer, is held to the accountability of a trustee for profits derived from property illegally dealt with. Blue Bell Co. v. Frontier Refining Co., 10 Cir., 213 F.2d 354, 362–363; Mater-

nally Yours, Inc., v. Your Maternity Shop, 2 Cir., 234 F.2d 538, 545; Dad's Root Beer Co. v. Doc's Beverages, 2 Cir., 193 F.2d 77. In both types of cases the crucial injury is one to the plaintiff's good will; in both the plaintiff may recover the defendant's profits. I think that in the one type as in the other the recovery may be classified as compensatory, rather than punitive, within the meaning of the federal rule limiting awards in civil contempt cases to those which are compensatory. An award in such cases surely cannot be characterized as "punitive." For its effect goes no further than to give to the plaintiff the profits derived by the defendant's wrongful conduct: it does not take from the defendant assets not related to its wrongful conduct. As noted in the Blue Bell Co. case, supra, such a recovery rests "upon the equitable principle of unjust enrichment" which is the antithesis of punishment. Restatement, Restitution, § 1.

For these reasons I think it would have been proper here to impose a fine, payable to the plaintiff, in the amount of the defendant's profits. However, for the reasons stated by Judge HAND, I agree with him that on the record here the proofs were not sufficient to make even a *prima facie* showing of the profits made by the defendant.

■ The second provision of the judgment ordered Golden Rule to pay Sunbeam $2,500 to cover expenses of the litigation including counsel fees. In this we find no error. Such expenses may be estimated and appraised by the court without proof of exact expenditures. Board of Trade of City of Chicago v. Tucker, 2 Cir., 221 F. 305. See also Moskovitz, Contempt of Injunctions, Civil and Criminal, 43 Colum.L.Rev. 780, 806–7, where it is stated that an

"* * * award for counsel fees, and other expenses of suit, need not be based on evidence of actual cost. This failure to require evidence seems proper since the courts should be expert in assessing the value of legal services and the costs of bring--

ing suit. The award should be limited to what is reasonable, actual expenditure not being the test, * * * inasmuch as plaintiff controls the amount of such expense."

The third provision of the judgment orders that Golden Rule pay Sunbeam $2,500 for each future violation of the consent decree.

This provision we affirm for the reasons stated in Judge HAND'S opinion.

Affirmed, except as to the $1,000 fine which is reversed.

HAND, Circuit Judge (concurring).

I agree with Judge HINCKS in affirming the award of $2,500 as reimbursement for costs and expenses and the award of $2,500 *in terrorem*, and in reversing the "fine" of $1,000 for past disobedience of the judgment.

First, as to the "fine" of $1,000. The Supreme Court in Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389, held that in a civil contempt proceeding for violation of a judgment forbidding infringement of a patent, the court might award to the patentee the infringer's profits upon his sales, even though the patentee proved no damages. It is true that the Third Circuit *in banco* decided by a vote of five to two that this was not what the Supreme Court meant, and that the plaintiff must show "that the contemptuous conduct did, in fact, have substantial injurious effect upon his economic interest" (National Drying Machinery Co. v. Ackoff, 245 F.2d 192, 194). However, I find it impossible to reconcile this holding with the language used in Leman v. Krentler-Arnold Hinge Last Co., supra, 284 U.S. 456, 52 S.Ct. at page 241: "While the distinction is clear between damages, in the sense of actual pecuniary loss, and profits, the latter may none the less be included in the concept of * * * compensation to the party injured. * * * The court of equity in such cases applies familiar principle in 'converting the infringer into a trustee for the patentee as regards the profits thus made.' * * * this Court succinctly stated the controlling principle in its opinion in Tilghman v. Proctor, 125 U.S. 136, 148, 8 S.Ct. 894, 900, 31 L.Ed. 664, as follows: * * * 'a court of equity, which has acquired, upon some equitable ground, jurisdiction of a suit for the infringement of a patent, will not send the plaintiff to a court of law to recover damages, but will itself administer full relief, by awarding, as an equivalent or a substitute for legal damages, a compensation computed and measured by the same rule that courts of equity apply to the case of a trustee who has wrongfully used the trust property for his own advantage.'" This doctrine is equally applicable to the case at bar. The defendant acquired articles in question subject to a lawful condition that it should not sell them below the Fair Trade price. In selling them below that price it received the proceeds as illegally as the infringer receives the proceeds of whatever infringing articles he may manufacture and sell.

However, difficulty arises in ascertaining what in fact were the defendant's profits. These consisted of the difference between the prices at which it sold and those at which it bought from the plaintiff, or from the plaintiff's middlemen. It is true that by destroying all the documents showing the prices at which it had bought or sold, the presumption arose *contra spoliatorem*, and justified the conclusion that the contents of the documents of purchase and sale if produced would have shown that it did realize profits. Yesbera v. Hardesty Mfg. Co., 6 Cir., 166 F. 120, 122; Armstrong v. Belding Bros. & Co., 2 Cir., 297 F. 728, 730. That however, does not fix the amount of the profits unless there be a maximum beyond which the profits could not have gone. Stella v. Graham-Paige Motors Corp., 2 Cir., 232 F.2d 299, 302. Although it might be proper to take as the maximum for the minuend the Fair Trade prices, there is no way to find the proper subtrahend: i. e., the prices at which the defendant bought. And most important of all, there is no way to ascertain how many and what articles the

defendant sold at less than Fair Trade prices. The occasion seems to us of the kind of which Judge Severens spoke in Yesbera v. Hardesty Mfg. Co., supra, 166 F. at page 123: "Of course if, in the absence of the better proof, there is still nothing of substance left on which the court can lay hold, there is no help, and the plaintiff must endure his loss." Much as we should like to find a way by which to compute the profits, we cannot do so, and for that reason I concur with Judge HINCKS in holding that the "fine" for past disobedience may not stand. Had the plaintiff sought to punish the defendant criminally for disobedience of the judgment, as it could have done, this lamentable result could have been avoided, but the proceeding was in no sense for criminal contempt.

We also hold that what I have called the "fine" *in terrorem* should be affirmed. For support of this conclusion we rely upon United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884, which imposed a "fine" as part of the civil remedy, conditioned upon the defendant union's continuing an existing strike. The opinion (330 U.S. at pages 303, 304, 67 S.Ct. at page 701) used the following language: "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." The "fine" that the court imposed upon the union in that case was of two kinds: $700,000 as damages for the injury already done by the strike and $2,800,000 *in terrorem* to secure its discontinuance. The Court agreed that in fixing the amount of the second "fine" the court should "consider the amount of the defendant's financial resources and the consequent seriousness of the burden to that particular defendant" (330 U.S. at page 304, 67 S.Ct. at page 701); but the "fine" was only "a means of securing future compliance" with the decree and was not measured by any damage that the plaintiff might suffer from future disobedience. In both that case and here this "fine" was imposed only conditionally and depended upon the contemnor's future conduct. The only distinction is that there the future conduct forbidden was continuing a strike already in existence, and here it is future sales of the plaintiff's goods below the Fair Trade prices. We can see no relevant difference between ceasing to strike against an employer and ceasing to sell goods one has procured below their fixed price. As appears from the language I have cited in United States v. United Mine Workers, supra, this does not mean that we have no control whatever over the amount of a "fine" *in terrorem;* but there is no ground for disturbing the discretion of the District Court in this case.

We therefore reverse the "fine" of $1,000, but otherwise affirm the judgment.

LUMBARD, Circuit Judge (concurring in part and dissenting in part).

I would affirm the judgment in all respects.

I agree with Judge HAND and Judge HINCKS in what they say about the award of $2,500 as reimbursement for costs and expenses and the award of $2,500 for each future violation.

As to the fine of $1,000 for past disobedience, it seems to me that the District Court had the power to impose a fine which would approximate the probable damages. Although it is impossible in cases such as this to say what the loss to the plaintiff has been, the authorities seem to support the view that it is enough to show the profits which the contemnor made and to award such amount. Leman v. Krentler-Arnold Hinge Last Co., 1932, 284 U.S. 448, 455, 52 S.Ct. 238, 76 L.Ed. 389; United States v. Aberbach, 2 Cir., 1948, 165 F.2d 713, 715.

Here there is a further difficulty because the defendant by its own calculated and deliberate action of systematically destroying all records relating to these prohibited sales made it virtually impossible for the plaintiff to produce any

proof of the extent of defendant's profits from such sales. The goods were purchased from various wholesalers of the plaintiff. So far as appears from the record the only way in which the plaintiff could have secured any evidence of defendant's sales would have been to conduct an examination of the accounts of scores of its wholesale customers in the New York area. To require such effort and expense merely because the defendant has destroyed the evidence would place a wholly disproportionate burden on the plaintiff.

As it is we do have proof that on five separate occasions during November and December 1956, buyers employed by the plaintiff did purchase articles from defendant at prices more than 20% off retail list, and therefore in violation of the law. We also know that the gross profit to Golden Rule on one of the sales was in excess of four dollars.[1] In view of the fact that the defendant was a discount house operating on the basis of volume selling, it is not unreasonable to conclude that hundreds of such sales were made. Thus the award of $1,000 seems to me, in the circumstances, to be a reasonable estimate.

Moreover, it is clear that the defendant counted on having to pay fines and awards as the necessary and expected expense of running a business which was constantly in contempt of judicial admonitions. Obviously the fact that Golden Rule might be required to pay $250 for each violation under the New York law was no deterrent but merely reduced by that much the profit which it made. Nor did the fact that Golden Rule had previously been adjudged in contempt eighteen times, presumably an expensive procedure entailing not only court costs but attorney's fees, deter the defendant from a continuance of these activities. A business which can assume such costs and expenses and yet continue merrily on its campaign of calculated contempt cannot be heard to complain that a federal court is without power to assess damages of $1,000 when it has deliberately destroyed the only reasonable means of arriving at a more exact assessment. See Eastman Kodak Co. v. Southern Photo Material Co., 1927, 273 U.S. 359, 379, 47 S.Ct. 400, 71 L.Ed. 684.

For these reasons I would affirm the District Court award of $1,000.

---

**1.** Petitioner's Exhibit 10 and the affidavit of Henrietta Faerber with reference to a Sunbeam Coffeemaster.