WESTINGHOUSE ELECTRIC & MFG. CO. v. WAGNER ELECTRIC & MFG. CO.

(Circuit Court of Appeals, Eighth Circuit.   August 16, 1909.   Rehearing Denied October 18, 1909.)

No. 2,857.

1. PATENTS (§ 328*)—INFRINGEMENT—ELECTRICAL CONVERTER.

The Westinghouse patent, No. 366,362, claim 4, for the combination, substantially as described, of an electric converter constructed with open spaces in its core, an inclosing case, and a nonconducting fluid or gas in said case, adapted to circulate through said spaces and about the converter for the purpose of cooling the same, construed, and *held* not infringed by a converter in which spaces were left between the coils, and between them and the inclosing case, for containing a cooling liquid, but which had no open spaces in its core; that being an essential element of the patented combination.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

2. PATENTS (§§ 312, 318*)—INFRINGEMENT—PROFITS RECOVERABLE—BURDEN OF PROOF.

Where an infringing article contains a material and substantial improvement over that of the patent, the patentee is not entitled to recover all of the profits made by the infringer, but only such as resulted from the use of the infringing parts, and the burden rests upon him to separate the profits arising therefrom by reliable and tangible evidence; nor does the fact that the infringer kept no separate account of such profits relieve him from such burden, where the books were so kept before there was any knowledge or belief of infringement, and without reference thereto.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 545, 572, 573; Dec. Dig. §§ 312, 318.*

Accounting by infringer for profits, see note to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8.]

Sanborn, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

For opinion below, see 129 Fed. 604.

Thomas B. Kerr and Paul Bakewell (Drury W. Cooper and Bakewell & Cornwall, on the brief), for appellant.

A. C. Fowler and Chester H. Krum, for appellee.

Before SANBORN and VAN DEVANTER, Circuit Judges, and RINER, District Judge.

RINER, District Judge.   This was a bill in equity filed by the appellant, Westinghouse Electric & Manufacturing Company, in the Circuit Court of the United States for the Eastern District of Missouri.   The bill charges the appellee, Wagner Electric & Manufacturing Company, with infringement of letters patent of the United States, No. 366,362, dated July 12, 1887, issued to George Westinghouse, Jr., and by him assigned to the appellant.   The patent relates to improvements in electrical converters or transformers, and the bill prayed for an injunction and an accounting.   The general nature and object of the invention is thus stated by the patentee:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

"The invention relates to the construction of a class of apparatus employed for transforming alternating or intermittent electric currents of any required character into currents differing therefrom in certain characteristics. Such apparatus are usually termed 'induction coils' or 'converters.' The object of this invention is to provide a simple and efficient converter, which will not become overheated when employed for a long time in transforming currents of high electric motive force, and which will be thoroughly ventilated."

The following drawings, copied from the patent, show a cross-section and a longitudinal section of appellant's transformer:

Having reference to the above drawings, the patentee, in describing the invention, says:

"Referring to the figures, A represents the core of the converter, and $C^1$ and $C^2$ the respective coils. The core is preferably composed of thin plates of soft iron, a, a, separated individually or in pairs from each other by thin sheets of paper or other insulating material. This insulating material is preferably applied to one surface of the plates by being glued or pasted thereto, and these surfaces may lie all in the same direction, thus separating the plates individually, or alternate plates may have their covered surfaces in one direction and the intervening plates have their covered faces in the opposite direction, thus magnetically separating the plates in pairs. The plates are preferably constructed with two rectangular openings, $e^1$ and $e^2$, through which the wires pass. For convenience in inserting the coils, or rather in applying the plates to the coils after the latter have been wound, a cut is made from each opening, as shown at b, b. By bending the ends, c, c, upward, the plates may then be thrust into position, and the ends, c, c, then close about the coils. The tongues, $e^3$, of succeeding plates, are preferably inserted from opposite sides. I do not, however, herein broadly claim an induction coil having its core constructed of thin plates formed in the manner just described; but such invention is claimed in an application of even date herewith, filed by Albert Schmid. Each group of—say five or six—plates thus applied is preferably separated from the succeeding group by air-spaces. These may be produced by passing tubes, $f^1$, $f^1$, which may be of soft iron or other metal, or of vulcanized fiber, along the lengths of the plates. It may be sufficient in other instances to block the group of plates apart at intervals, instead of extending the tubes the entire length. Preferably, also, the primary and secondary coils, $C^1$, $C^2$, are separated from each other in a similar manner. In this instance blocks or tubes, $f^2$, of nonconducting materials, are used. The tubes may be perforated, as shown at $f^3$, $f^3$. Where the converter is to be used in open air, the tubes, $f^1$ and $f^2$, would permit a free circulation of air, and thus aid in keeping the converter cool. It may be preferred in some instances to surround the converter with some oil or paraffine, or other suitable material, which will assist in preserving insulation and will not be injured by heating. This material,

when in a liquid form, circulates through the tubes and the intervening spaces of the coils and plates, and preserves the insulation, excludes the moisture, and cools the converter. The entire converter may be sealed into an inclosing case, H. which may or may not contain a nonconducting fluid or a gas."

The patent contains five claims, but the bill charges infringement of claim 4 only, which reads:

"The combination, substantially as described, of an electric converter constructed with open spaces in its core, an inclosing case, and a nonconducting fluid or gas in said case adapted to circulate through said spaces and about the converter."

This claim was adjudged valid in Westinghouse Electric & Mfg. Co. v. Union Carbide Co. (C. C.) 112 Fed. 417, and 117 Fed. 495, 55 C. C. A. 230, hereafter referred to as the Carbide Case, and in Westinghouse Electric & Mfg. Co. v. American Transformer Co. (C. C.) 130 Fed. 550, and its validity was also recognized by the Circuit Court in this case. In the foregoing cases it was decided that most, if not all, of the elements of the combination of claim 4 were old in the art; but, the combination being new, it was held patentable, and in this view we concur. The appellee manufactured and sold two types of transformers—the device involved in the carbide suit, which was there held to be an infringement of claim 4 of appellant's patent, and the device referred to in the record as "Type M." Both are claimed by appellant to be infringements of claim 4 of its patent.

The court below found that appellee's type M device did not infringe claim 4 of appellant's patent, and referred the cause to a master to take and state an account of the "profits, gains, and advantages" received by the appellee, together with all damages suffered by the appellant by reason of the manufacture and sale by the appellee of the transformer held in the Carbide suit to be an infringement of claim 4 of the patent. Upon the incoming of the master's report, exceptions were filed thereto by the appellee, the exceptions sustained, and a decree awarding appellant nominal damages only was entered. Two questions are presented for decision: First. Did appellee's transformer, type M, infringe claim 4 of appellant's patent? Second, what is the proper measure of recovery upon the accounting? These questions will be considered in the order stated.

The appellee's transformer, decided in the Carbide suit to be an infringement of the appellant's patent, had open spaces, not only between the coils and between the coils and the core, but also open spaces in the core, and as to that device it is admitted in the answer that the decision in that case is res adjudicata and that a permanent injunction should be granted; but the answer denies that the other type of transformer involved in this suit, known as "Type M," is an infringement of claim 4 of plaintiff's patent, and the appellee insists that, while its transformer, type M, the only one manufactured by it since the decision in the Carbide suit, has open spaces between the coils, and between the coils and the core, it has no open spaces in the core, within the meaning of claim 4 of appellant's patent, and that the open spaces in the core are one of the principal elements of the combination of the claim in suit, and therefore its type M device is not an infringement. Thus the question is presented whether the open spaces between the

coils, and between the coils and the core, found in appellee's device, type M, can be said to be open spaces in the core, within the meaning of claim 4 of appellant's patent. It is not contended that the rectangular openings in the core for the purpose of admitting the coils come within the claim; but it is insisted by appellant that the open spaces between the coils, and between the coils and the core, are open spaces in the core, within the meaning of the claim we are now considering.

That claim is for a combination, and the rule by which we are to be governed in the determination of the question presented is clearly stated in Water Meter Co. v. Desper, 101 U. S. 332, 25 L. Ed. 1024, as follows:

"It is a well-known doctrine of patent law that the claim of a combination is not infringed if any of the material parts of the combination are omitted. It is equally well known that if any one of the parts is only formally omitted, and is supplied by a mechanical equivalent, performing the same office and producing the same result, the patent is infringed."

And again, in the same case, the court said:

"Our law requires the patentee to specify particularly what he claims to be new, and, if he claims a combination of certain elements or parts, we cannot declare that any one of these elements is immaterial. The patentee makes them all material by the restricted form of his claim. We can only decide whether any part omitted by an alleged infringer is supplied by some other device or instrumentality, which is its equivalent."

In Westinghouse Electric & Mfg. Co. v. American Transformer Co., supra, the Circuit Court for the District of New Jersey, in contrasting the several claims of the patent, one with another, for the purpose of more certainly ascertaining the meaning of claim 4, said:

" * * * The 'spaces' of claim 4 are 'open spaces in its core.' The 'open space' of claim 1 is that intervening between 'parallel primary and secondary coils.' The combination of claim 2 has as its elements, first, primary and secondary coils; second, a core composed of laminæ of soft iron arranged in groups; and, third, 'open spaces' separating said groups. This claim, aside from the coils, specifically refers to the construction of the core, but lacks the elements of 'an inclosing case' and 'a nonconducting fluid or gas in said case adapted to circulate through said spaces and about the converter,' included in the combination of claim 4. The elements of the combination of claim 3 are, first, a core composed of soft iron plates arranged in groups and, second, 'open tubes,' intervening. This claim specifically refers to a particular construction of the core, but, like claim 2, lacks two of the elements of claim 4. Claim 5 includes the following elements: First, primary and secondary coils; second, a core composed of magnetically separated laminæ of soft iron arranged in groups; third, 'air spaces' separating the different groups from each other; and, fourth, the arrangement of the laminæ of the several groups in different parallel planes. This claim also specifically refers to a particular construction of the core, but, like claims 2 and 3, lacks the same two elements of claim 4. In the combination of claim 4 'open spaces in its core' as well as an 'inclosing case' and 'a nonconducting fluid or gas' therein, are 'substantially as described.' No doctrine of equivalency can dispense with the open spaces in the core of the transformer, for they are a necessary element of the combination. Without them the claim cannot be satisfied. Open spaces might be produced in the core, other than those specifically set forth in the drawings or description, which would be the equivalent of the latter. The core itself might, for instance, be cut into various directions in such manner as to expose what may be termed internal heat-dissipating surfaces to the oil or other medium surrounding the transformer, and in such case, the other requirements of the combination being satisfied, infringement could be found. But the essence of

the first element of the claim insisted on is that the open spaces of the transformer must be 'in its core.' "

And, in passing upon this question in the present case, Judge Adams, then presiding in the Circuit Court, said:

"These numerous parallel open spaces so shown in the drawings and model, and any other open spaces, whether parallel or not, cutting through the body of the surrounding core and extending into the interior opening containing the coils, are, in my opinion, the 'open spaces in its core' contemplated by claim 4. The purpose of these open spaces, as disclosed by the patent and the evidence of experts, is to permit the oil to so bathe the heat-producing surfaces of the transformer, and to so circulate throughout the parts of the transformer, as to preserve the insulation of the coils, and radiate the heat generated by the transformer's action. The use of oil or paraffine in a tank inclosing the transformer for the purposes just specified has been long known to the art, and is recognized by at least two patents prior in date to complainant's patent. Accordingly, the invention has for its main purpose only the physical means for effectually securing this circulation of oil. It deals with the core itself, and divides it up into groups of plates, each group separate from the other in such way as to make numerous parallel open spaces in the core leading from its outer surface on all its four sides into the interior opening made for the introduction of the coils. This interior opening, called in the patent 'two rectangular openings, e¹ and e², through which the wires pass,' is not, in my opinion, 'an open space in its core,' within the meaning of claim 4. I adopt the views of Prof. Nipher with respect to this rectangular opening. He says: 'The core is not the core of a transformer or converter, until these rectangular openings are made through it.' He says further: 'These openings give character to the core.' 'It is not a core until they exist there.' 'The core is in fact given such a form that it surrounds the coil in a certain sense, and the space so surrounded by the core might be called a coil opening.' The core of a transformer is the iron part of it. It must be so constructed as to permit the introduction of the coils of wire approximately through its center. The wire coil must be put in to make a transformer. I cannot understand how this space left in the inside of the iron for this purpose can be an open space in the core. It might be as well said that the space left on the outside of the iron, between it and the incasing tank, is an open space in the core. The defendant's device has a space between the coils, and has also this rectangular opening for the introduction of the coils into the core; but, for the reasons above expressed, these are not 'open spaces in its core,' within the meaning of the patent in suit." 129 Fed. 604.

As already suggested, if we understand appellant's contention, it is that the term "open spaces in the core," in claim 4 of its patent, includes and means spaces between the coils, and between the coils and the core, or that such spaces are the equivalent of spaces in the core. But the trouble with this suggestion is that the claim in suit describes no such spaces, and by its particularization impliedly excludes them. In that claim the patentee describes a combination consisting of certain enumerated elements, and by that enumeration he is bound.

The Circuit Court held that the open spaces in the core, as described in claim 4, and the open spaces between the coils and between the coils and the core, were physically different things; and that this is so is apparent, we think, from an examination of the patent as a whole. As we fully concur in the conclusion reached by the Circuit Court, that the appellee's device, type M, does not infringe claim 4 of appellant's patent, we pass to the second question, namely, the measure of recovery upon the accounting for the admitted infringement which is predicated upon the type of transformer involved in the Carbide Case.

· At the conclusion of the appellant's case the appellee demurred to the evidence, on the ground that, under the showing then made, appellant was entitled to nominal damages only. The demurrer was overruled by the master. The appellee then introduced evidence, and the cause was submitted. The master found that each and every part of claim 4 of appellant's patent was old, with the exception of the air-tight inclosing case; that the patentee made a wholly new combination described in claim 4 of his patent; that this new combination constituted an entirely new transformer, complete in itself; that it was infringed in its entirety by appellee's transformer; that the entire commercial value of the infringing transformers manufactured and sold by the appellee during the time concerned in the accounting was due to the presence therein of the combination described in claim 4 of appellant's patent; that the profits made by the appellee on the infringing transformers were merged in the profits of its general business, so that it was impossible to separate them; that the appellee kept no separate account of the manufacture of the infringing transformers, and did not know and could not furnish the cost of the manufacture of them, nor even an estimate of such cost; that the business of the manufacture and sale of the infringing transformers was so intermingled and confused with appellee's general business that approximate results only would be possible; that the profits realized by the appellee· from the manufacture and sale of the infringing transformers, as nearly as it could be reached through "estimates, comparisons, and apportionments," were approximately 25 per cent. on the net amount of sales of the infringing transformers; that the gross sales, after deducting commissions, amounted to $874,060.15; that the labor and material amounted to $529,733.43; that the factory cost amounted to $211,893.37; that the profits realized were $134,433.35; and he recommended that a decree be entered in favor of appellant and against the appellee for that amount.

Exceptions were filed to the findings and recommendation of the master, and upon final hearing the court disapproved the report of the master, sustained the exceptions to his findings and recommendation, and in lieu of the decree recommended by the master entered one allowing appellant nominal damages only. The opinion, to which reference was made in the decree, discloses that the court was of opinion that the patented combination of the appellant was only a part of the infringing transformer manufactured and sold by the appellee; that the appellant was not entitled to the entire profits realized by the appellee from that transformer, but only to so much of the profits as was due to the presence in that transformer of the patented combination; that the burden was upon the appellant to show by competent evidence how much of the entire profits was due to the use of its combination; that the appellant had failed to sustain the burden so resting upon it, and the evidence for the appellee threw no light upon the subject; and that the master's findings and recommendation proceeded upon the erroneous theory that, in that situation, the appellant could recover the entire profits realized by the appellee from the infringing transformer, regardless of what portion of those profits arose from the

use of the appellant's patented combination. We are unable to concur in the master's findings. We think claim 4 is a limited detailed claim ——open spaces in the core being one of its chief or distinguishing features. This was the view entertained by Judge Amidon upon an application for a temporary injunction, and by Judge Adams at the hearing upon which the case was referred to the master. 129 Fed. 604. See, also, Westinghouse Electric & Mfg. Co. v. Union Carbide Co., 117 Fed. 495, 55 C. C. A. 230; Westinghouse Electric & Mfg. Co. v. American Transformer Co. (C. C.) 121 Fed. 560, 130 Fed. 550.

The evidence clearly shows, we think, that the thing principally to be desired in the construction of a transformer is to keep the coils, rather than the core, from becoming overheated. The appellant's patent, claim 4, seems to have proceeded upon the idea that the thing principally to be accomplished was to keep the core from becoming overheated, and to that end it provided that one element of the combination covered by claim 4 was to be the open spaces in the core; nothing whatever being said in that claim about open spaces between the coils, or about open spaces between the core and the coils. Bearing in mind that the thing desired is to prevent the overheating of the coils, it will be seen that appellant's combination, claim 4, operates to that end only in so far as the core, if becoming overheated, would have a tendency to heat the coils. The appellee, in our view, improved upon appellant's device by providing, in addition to spaces in the core, for spaces between the coils and spaces between the core and the coils, through which the oil or other cooling medium could circulate and thereby much more certainly and efficiently accomplish the purpose desired, viz., keeping the coils at a proper state of temperature. This, we think, was a material and substantial improvement on appellant's combination, claim 4. It must, of course, be conceded that while appellant's combination, claim 4, although really designed to keep the core from becoming overheated, also tended to keep the coils from becoming overheated; but the appellee's transformer much more efficiently accomplished the result desired by providing for a circulation of oil or other cooling medium through the open spaces between the coils, and between the core and the coils, as well as through the open spaces in the core. We conclude, therefore, that the master was in error in finding that the entire commercial value of the infringing transformers manufactured and sold by the appellee during the time concerned in the accounting was due to the combination described in claim 4 of appellant's patent.

And to the extent that the appellee has improved upon that which was covered by appellant's patent, claim 4, the appellant cannot demand the appellee's profits, because the only right of the appellant to complain of the appellee is in the use by the appellee of the patented combination, claim 4, and the only right which the appellant has to profits realized by the appellee is confined to such profits as resulted solely from the use of appellant's combination, claim 4; the profits resulting from the improvement made by the appellee being something in which the appellant has no interest. The evidence shows, we think, that the open spaces between the coils, and between the core and the

coils, performed a very substantial office, and that if added to spaces in the core would, as already suggested, necessarily accomplish the desired result more certainly and more efficiently. The patented device covered by claim 4, being, as we view it, a limited detailed claim, and not being generally for a circulatory system throughout the heat producing parts of the transformer, and the appellee's infringing transformer embracing something of value not covered by that claim, viz., open spaces between the coils, and between the coils and the core, we are of opinion that the appellant, whose patent covered only part of the infringing device, is not entitled to recover all the profits made by the appellee, but only such as resulted from the patented invention. Stirrat v. Excelsior Mfg. Co., 61 Fed. 980, 10 C. C. A. 216; Baker v. Crane, 138 Fed. 60, 70 C. C. A. 486; Robertson v. Blake, 94 U. S. 728, 24 L. Ed. 245; Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371.

The master's report shows that appellant offered no evidence upon the question of damages, but relied entirely upon the position that the amount which it was entitled to recover could be based upon the profits realized by the appellee from the sale of the infringing device. The master found that the appellee kept no separate account of its profits realized from its infringing device, but, on the contrary, that the profits made by appellee on the infringing transformers were merged with the profits of its entire business, so that it was impossible to separate them, and that the appellee did not know and could not furnish the cost of the manufacture of the infringing transformers, or even an estimate thereof. We do not think the mere failure to keep separate the profits derived from the infringing device, under the circumstances disclosed by the record, warrants the application of the equity rule that where one wrongfully mingles his goods with those of another, so that they are indistinguishable from the mass, the party injured is entitled to take the whole. This rule has been applied in cases of the invasion of a copyright, where the drongdoer has mingled in the book matter to which a copyright does not properly extend with matter covered by the copyright, "the two necessarily going together, when the volume is sold as a unit, and it being impossible to separate the profits on the one from the profits on the other, and the lawful matter being useless without the unlawful." Callaghan v. Myers, 128 U. S. 617, 9 Sup. Ct. 177, 32 L. Ed. 547.

There is no evidence tending to show that the appellant's failure to show how much of the appellee's profit resulted from the infringed combination and how much from the presence of the other elements of the infringing transformer was due to any refractory or deceitful conduct on the part of the appellee, such as destruction or hiding of the books, or refusal to produce them for the use of the appellant. The mere failure on the part of the appellee to keep an account separating the profits prior to the sustaining of appellant's patent and at a time when, as the record shows, appellee believed in good faith that it was not invading any right of the appellant, is not conduct which would render the appellee liable as a confuser of goods within the rule just stated, nor such conduct as would relieve appellant from the necessity of carrying the prescribed burden of proof. Seymour, et al. v. McCormick, 57 U. S. 480, 14 L. Ed. 1024. In Keystone Mfg. Co. v.

Adams, 151 U. S. 139, 14 Sup. Ct. 295, 38 L. Ed. 103, the Supreme Court, discussing a similar question, said:

"While it is undoubtedly established law that complainants in patent cases may give evidence tending to show the profits realized by defendants from use of the patented devices, and thus enable the courts to assess the amounts which the complainants are entitled to recover, yet it is also true that great difficulty has always been found, in the adjudicated cases, in applying the rule that the profits of the defendant afford a standard whereby to estimate the amount which the plaintiff is entitled to recover, and in defining the extent and limitations to which this rule is admittedly subject. Such a measure of damages is of comparatively easy application, where the entire machine used or sold is the result of the plaintiff's invention; but when, as in the present case, the patented invention is but one feature in a machine embracing other devices that contribute to the profits made by the defendant, serious difficulties arise. It is unnecessary, in this opinion, to review the numerous cases, some at law, others in equity, wherein this court has considered various aspects of this question. It is sufficient to say that the conclusions reached may be briefly stated as follows: It is competent for a complainant, who has established the validity of his patent and proved an infringement, to demand, in equity, an account of the profits actually realized by the defendant from his use of the patented device; that the burden of proof is on the plaintiff; that where the infringed device was a portion only of defendant's machine, which embraced inventions covered by patents other than that for the infringement of which the suit was brought, in the absence of proof to show how much of that profit was due to such other patents, and how much was a manufacturer's profit, the complainant is entitled to nominal damages only"—citing Seymour v. McCormick, 16 How. 480, 14 L. Ed. 1024; Rubber Co. v. Goodyear, 9 Wall. 788, 19 L. Ed. 566; Mowry v. Whitney, 14 Wall. 620, 20 L. Ed. 860; Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000.

In Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, the Supreme Court quoted with approval a statement of the rule announced by the Circuit Court, as follows:

"The patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative."

And upon this question the burden of proof is upon the complainant. If he fails to carry this burden, he is entitled only to nominal damages. In Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664, the court, in the course of its opinion, said:

"The infringer is liable for actual, not for possible, gains. The profits, therefore, which he must account for, are not those which he might reasonably have made, but those which he did make, by the use of the plaintiff's invention; or, in other words, the fruits of the advantage which he derived from the use of that invention over what he would have had in using other means than open to the public and adequate to enable him to obtain an equally beneficial result. If there was no such advantage in his use of the plaintiff's invention, there can be no decree for profits, and the plaintiff's only remedy is by an action at law for damages."

Here the appellant failed to prove by reliable or tangible evidence that the entire value of the infringing transformer as a marketable article was properly and legally attributable to appellant's patented combination embodied therein, and so, in the light of the decisions above cited, and many others, which we have examined, announcing the same rule, we think that the appellant is entitled to recover nominal damages only; in other words, that as part only of the profits made by the

173 F.—24

appellee are attributable to the appellant's combination, the balance being attributable to the presence in the infringing device of elements not included in that combination, and as the appellant failed to make proof of how much of the total profits was due to the presence of its combination in the infringing device, there is nothing upon which more than a nominal recovery could be grounded.

The conclusion reached is that the decree finding that the device, type M, without open spaces in the core, now manufactured by the appellee, does not infringe appellant's patent, and that the appellant is entitled to nominal damages only on account of the infringing device, must be affirmed.

SANBORN, Circuit Judge (dissenting). A clear conception of the desideratum, and of the root, principle, or mode of operation of an invention devised to attain it, is indispensable to a correct decision of a question of infringement, because that device or combination is the mechanical equivalent of another under the law of patents which accomplishes the desideratum in substantially the same way, although the devices differ in name, form, location, or shape. Machine Company v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935; Winans v. Denmead, 15 How. 330, 342, 14 L. Ed. 717; Blandy v. Griffith, 3 Fish. Pat. Cas. 609, 616, 3 Fed. Cas. 675,678. The claim of the invention involved in this case is:

"The combination, substantially as described, of an electric converter constructed with open spaces in its core, an inclosing case, and a nonconducting fluid or gas in said case adapted to circulate through said spaces and about the converter."

The specification of a patent, which forms a part of the same application as its claim, must be read and construed with it, to ascertain the true meaning and actual intent of the parties to the contract which the specification and the claim evidence, for the purpose of determining what the principle or mode of operation was which the parties intended to secure to the patentee. Seymour v. Osborne, 11 Wall. 516, 547, 20 L. Ed. 33; O. H. Jewell Filter Co. v. Jackson, 72 C. C. A. 304, 308, 140 Fed. 340, 344. Prior to the invention under consideration it had been impracticable to use converters cooled by the natural circulation of air which had a capacity of more than 10 kilowatts. But by the use of the patentee's combination, by means of which a circulation of oil through and around the converter in an inclosed case was effected, converters with a capacity of 500 kilowatts became serviceable and merchantable. The following terms of the specification show the object and the principle or mode of operation of the invention:

"The object of this invention is to provide a simple and efficient converter, which will not become overheated when employed for a long time in transforming currents of high electromotive force. * * * The core is preferably composed of thin plates of soft iron, a, a. * * * The plates are preferably constructed with two rectangular openings, e1 and e2, through which the wires pass. * * * Each group of—say five or six—plates thus applied is preferably separated from the succeeding group by air spaces. These may be produced by passing tubes, f1, f1, which may be of soft iron or other metal, or of vulcanized fiber, along the lengths of the plates. It may be sufficient in other instances to block the groups of plates apart at intervals, instead of extending

the tubes the entire length. * * * Preferably, also, the primary and secondary coils, C¹, C², are separated from each other in a similar manner. * * * It may be preferred in some instances to surround the converter with some oil or paraffine, or other suitable material, which will assist in preserving insulation and will not be injured by heating. This material, when in a liquid form, circulates through the tubes and the intervening spaces of the coils and plates, and preserves the insulation, excludes the moisture, and cools the converter. The entire converter may be sealed into an inclosing case."

The claim under consideration is restricted to the invention of the combination, substantially as described in this specification, of an electric converter with open spaces in its core, an inclosing case, and a nonconducting fluid or gas in the case adapted to circulate through the spaces in and about the converter. What was the object of this invention? The prevention of the overheating of the converter, and of every part of it. What was the root, the principle, or mode of operation whereby this object was to be attained? The circulation of oil in a sealed case over increased radiating surfaces "through the tubes and the intervening spaces of the coils and plates," whereby the converter is cooled, insulation is preserved, and moisture is excluded. In my opinion the principle of the invention patented under claim 4 is not either the rectangular openings across the planes of the iron plates, nor the tubes between the plates, nor the blocked spaces between them, nor the openings between the coils, nor any of the elements of the combination, all of which are described in the specification as preferably employed, but it is the circulation of the oil over increased radiating surfaces by means of the combination patented through open spaces in and about the converter, and what Westinghouse secured by this claim was, not the particular openings he specified as preferably made in the core or in the converter, but, as held by the Circuit Court of Appeals of the Second Circuit, in the decision upon which this and other suits for the infringement of this patent rest—

"the means by which the external and internal surface of the heat-producing parts of a converter were cooled by such an arrangement and separation of parts as would permit the circulation about them of oil, and the means for the retention of said oil within and about said surfaces whereby the heat from the oil radiated to the surrounding air." Westinghouse Electric & Mfg. Co. v. Union Carbide Co., 117 Fed. 495, 498, 55 C. C. A. 230.

The defendant first made and sold a converter with open rectangular spaces in the soft iron plates in which the coils were inserted, with open spaces between the plates, and with open spaces between the coils, and it was adjudged an infringement. It then made and sold a converter, called "Type M," with all the open spaces specified by the patentee except those between the plates, and with spaces between the coils and the plates, and it seeks to escape infringement because it has secured the requisite increased radiating surface by substituting the open spaces between the plates and the coils for the open spaces between the plates described by Westinghouse, while it retains all the other open spaces and details of his description. But the substance of this invention is the circulation of oil around and through increased radiating surfaces in a converter inclosed in a sealed case, and the locality in which the increased surfaces are placed and the forms in which they are embodied are immaterial upon the question of infringement,

because the principle or mode of operation is the same, whether the surfaces are exposed by openings between the iron plates through which the oil circulates to and along the coils from without or by openings between the iron plates and the coils through which the oil may pass. In either case the object of the invention is attained by the circulation of the oil over the increased radiating surfaces of a converter in a sealed case.

It is contended that the spaces between the coils and the plates are more efficient in cooling the coils which are more likely to become overheated than the plates. But in my opinion the evidence fails to sustain this contention, and if it were sustained the defendant could not escape infringement by appropriating and then improving the patented combination of the complainant. The spaces between the coils and the plates are the plain mechanical equivalents of the spaces between the plates, because they do the same work in the same way. They cool the converter by the circulation of the oil through them and over increased radiating surfaces in a closed case, and—

"if two devices do the same work in substantially the same way and accomplish the same result they are the same, even though they differ in name, form, or shape." Machine Company v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935.

"Where the whole substance of the invention may be copied in a different form, it is the duty of courts and juries to look through the form to the substance of the invention for that which entitled the inventor to his patent and which the patent was designed to secure. When that is found there is an infringement, and it is not a defense that it is embodied in a form not described and in terms claimed by the patentee." Winans v. Denmead, 15 How. 330, 342, 14 L. Ed. 717.

Because the open spaces between the coils and the plates, which the defendant substituted for the open spaces between the plates, were the mechanical equivalents of the latter, and because the defendant's type M was a copy of the whole substance of the complainant's invention, that converter seems to me to constitute an infringement of the fourth claim of the Westinghouse patent. Moreover, the limitation of the words "open spaces in the core" in this fourth claim to the open spaces between the plates of the core seems to me to be unwarranted by the claim and specification (1) because the spaces between the plates are the subject of a specific claim, No. 2 in this patent, and therefore these spaces are presumably not covered by the general claim of the combination which is here in suit; and (2) because the specification describes three other classes of open spaces in the core, to wit, "two rectangular openings, $e^1$ and $e^2$, through which the wires pass," "tubes, $f^1$, $f^1$, which may be of soft iron or other metal, or of vulcanized fiber, along the lengths of the plates," and the spaces between the coils, which "are separated from each other in a similar manner"—that is to say, by tubes or blocks between them. Not only this, but the open spaces between the plates are not claimed to be, and are not, an essential element of the combination of the fourth claim, but are expressly stated in the specification to be a mere preferable method of constructing the converter, so as to give it increased radiating surface. On this subject the specification reads:

"Each group of—say five or six—plates thus applied is preferably separated from the succeeding group by air spaces. These may be produced by tubes,

f¹, f¹.   *   *   *   It may be sufficient in other instances to block the group of plates apart at intervals, instead of extending the tubes the entire length."

The statute requires that the inventor shall point out the principle of his invention—

"and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery."   U. S. Comp. St. 1901, § 4888.

A patent for a combination claimed secures the association of the elements specified, but does not claim or patent any of the elements or details of the specification.   They are but a part of the preferable method pointed out, and one who takes and uses the principle and the whole substance of an invention, as the defendant has in its type M, may not escape infringement by the mere substitution of other obviously equivalent means or details for some of the means described by the patentee as a part of his preferable mode of applying his principle.   Paper Bag Patent Case, 210 U. S. 405, 418, 28 Sup. Ct. 748, 52 L. Ed. 1122; Deering v. Harvester Works, 155 U. S. 286, 302, 15 Sup. Ct. 118, 39 L. Ed. 153; City of Boston v. Allen, 91 Fed. 248, 249, 33 C. C. A. 485, 486; Reece Button Hole Ma. Co. v. Globe Button Hole Ma. Co., 61 Fed. 958, 964, 10 C. C. A. 194, 200; Brammer v. Schroeder, 106 Fed. 918, 928, 930, 46 C. C. A. 41.

Turning to the question of damages for the infringement by the manufacture and sale of defendant's first converter, we are met by the claims that the complainant was entitled to no recovery because the defendant improved the patentee's combination by adding open spaces between the plates and the coils, and no evidence was produced which separated the profits attributable to that improvement from those derived from the patented combination, and because the defendant did not stand in the relation of a trustee of the profits for the patentee, and owed it no duty to keep them separate, or to account for them.   There is some testimony in the record that the coils became more overheated than the plates, and that the open spaces between the coils and the plates tend to cool the former more efficiently than the spaces between the plates.   But the spaces between the plates permit the oil to circulate between the plates against and around the coils, and the evidence of the superiority of the spaces between the coils and the plates fails to persuade my mind that the latter constituted any real improvement upon the mode described by the patentee.   On the other hand, it leads me to believe that these new spaces and this theory concerning them constituted a mere subterfuge of the defendant, conceived to avoid a just liability for its infringement.

Moreover, the measure of the complainant's damages was not the difference between the profits the defendant would have derived from the complainant's combination and those it did derive from its form of it.   It was the difference between the profits wihch the defendant derived from the use of the complainant's combination and those it might have derived from the use of any other combination then known and open to the public which would have produced an equally beneficial result.   Tilghman v. Proctor, 125 U. S. 136, 146, 8 Sup. Ct. 894, 31

L. Ed. 664. And as there was no such combination or converter the alleged improvement was immaterial. ' The indisputable facts that converters that have a capacity between 10 kilowatts and 500 kilowatts were first made serviceable and merchantable by the complainant's combination, and that all the 'converters made and sold by the defendant were of this capacity and embodied the complainant's combination, lie conceded at the foundation of this case. Without the complainant's combination, whereby the oil was circulated in a sealed case through the intervening spaces of the coils and plates and around the converter, the defendant never could have used or sold one of its infringing transformers. In the light of these facts the master found that the entire commercial value of the infringing converters manufactured and sold by the defendant during the time concerned in the accounting was due to the complainant's combination. "The conclusions of the master, depending upon the weighing of conflicting testimony, have every reasonable presumption in their favor, and are not to be set aside or modified, unless there clearly appears to have been error or mistake on his part." Tilghman v. Proctor, 125 U. S. 136, 150, 8 Sup. Ct. 894, 31 L. Ed. 664; Metsker v. Bonebrake, 108 U. S. 66, 2 Sup. Ct. 351, 27 L. Ed. 654. And the evidence not only fails to disclose to my mind any error or mistake in the findings of the master, but compels my assent to his conclusion.

Is the complainant barred from the recovery of any of the profits the defendant derived from its infringement because it failed to separate those derived from its combination from those which the defendant otherwise derived from the infringement? It is settled rule that:

"Upon a bill in equity by the owner against infringers of a patent, the plaintiff is entitled to recover the amount of gains and profits that the defendants have made by the use of his invention. * * * The reasons that have led to the adoption of this rule are that it comes nearer than any other to doing complete justice between the parties; that in equity profits made by the infringer belong to the patentee, and not to the infringer; and that it is inconsistent with the ordinary principles and practice of courts of chancery, either, on the one hand, to permit the wrongdoer to profit by his own wrong, or, on the other hand, to make no allowance for the cost and expense of conducting his business, or to undertake to punish him by obliging him to pay more than a fair compensation to the person wronged. The infringer is liable for actual, not for possible, gains. The profits, therefore, which he must account for, are not those which he might reasonably have made, but those which he did make, by the use of the plaintiff's invention; or, in other words, the fruits of the advantage which he derived from the use of that invention over what he would have had in using other means then open to the public and adequate to enable him to obtain an equally beneficial result. * * * A court of equity which has acquired, upon some equitable ground, jurisdiction of a suit for the infringement of a patent, will not send the plaintiff to a court of law to recover damages, but will itself administer full relief by awarding, as a substitute for legal damages, a compensation computed and measured by the same rule that courts of equity apply to the case of a trustee who has wrongfully used the trust property to his own advantage. Root v. Railway Company, 105 U. S. 189, 214, 215, 26 L. Ed. 975." Tilghman v. Proctor, 125 U. S. 136, 144, 145, 146, 148, 8 Sup. Ct. 894, 31 L. Ed. 664.

Let us apply these rules to this case. The complainant is entitled to the fruits of the advantage which the defendant derived over what it would have had in using any other known converter then open to the

public and adequate to enable it to obtain an equally beneficial result. There was no other known converter open to the public which could be used to produce the result obtained by complainant's combination. The complainant was consequently entitled to all the profits and all the advantages derived from the defendant's use of the infringing machine. Crosby Steam Gage Valve Company v. Consolidated Safety Valve Company, 141 U. S. 441, 448, 449, 12 Sup. Ct. 49, 35 L. Ed. 809; Manufacturing Company v. Cowing, 105 U. S. 253, 26 L. Ed. 987.

The decisions present two classes of cases, each governed by its own measure of profits recoverable for an infringement. Where the patented device is a slight improvement upon an existing and operative machine, which accomplished the same result without as with the patented improvement, as in Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, where the patented improvement was a slight change in the jaw of a well-known and operative mop head, Keystone Mfg. Co. v. Adams, 151 U. S. 139, 14 Sup. Ct. 295, 38 L. Ed. 103, where the improvement patented was a revolving winged shaft attached to an old operative and successful corn sheller to facilitate the movement of the corn into the sheller, and in Seymour v. McCormick, 16 How. 480, 14 L. Ed. 1024, where the improvement was a driver's seat upon an operative and successful harvesting machine, the profits from the sale or use of the entire machine, the entire mop head, the entire corn sheller, or the entire harvesting machine may not be recovered by the patentee; but his recovery is limited to the profits derived from the patented improvement to the operative machine only. And when a complainant has a patent upon improvements to a machine, parts of which are patented to others under prior grants, as in Blake v. Robertson, 91 U. S. 728, 24 L. Ed. 245, the recovery is likewise limited to the profits derived from the complainant's patented improvement separated from those derived from the improvements patented to others. But where the complainant's patent secures a new combination, or a new machine, which accomplishes a result never attained before it was invented, the entire profits derived from the infringing device are recoverable; for, since no combination or device existed before the invention by which the desired object could be attained, there is no combination or device but the inventor's to which the profits can be lawfully attributed. Crosby Steam Valve Company v. Safety Valve Company, 141 U. S. 441, 448, 449, 454, 12 Sup. Ct. 49, 35 L. Ed. 809; Brennan & Company v. Dowagiac Mfg. Co., 162 Fed. 472, 475, 89 C. C. A. 392, 395; Dowagiac Mfg. Co. v. Superior Drill Company, 162 Fed. 479, 481, 89 C. C. A. 399; Elizabeth v. Pavement Company, 97 U. S. 126, 24 L. Ed. 1000; Manufacturing Company v. Cowing, 105 U. S. 253, 26 L. Ed. 987; Hurlbut v. Schillinger, 130 U. S. 456, 9 Sup. Ct. 584, 32 L. Ed. 1011; Warren v. Keep, 155 U. S. 265, 15 Sup. Ct. 83, 39 L. Ed. 144; Ruggles v. Eddy, 20 Fed. Cas. No. 12,116; Zane v. Peck (C. C.) 13 Fed. 475; Fifield v. Whittemore (C. C.) 33 Fed. 835; Creamer v. Bowers (C. C.) 35 Fed. 206; Orr & Lockett Hdwe. Co. v. Murray, 163 Fed. 54, 56, 89 C. C. A. 492.

I am unable to escape the conviction that the case in hand falls

under the latter rule. The claim upon which this suit is founded is for a patented combination of old elements. It is not restricted to the open spaces between the plates, or to the inclosing case or to anything but the association of all the elements described and claimed. Neither the open spaces between the plates, nor the tubes, nor the plates, nor the coils, nor the oil, nor the spaces between the coils, nor any other detail of the combination, is patented by this fourth claim of the patent. Any one may use, without infringing this claim, not only these details, but also any one, or all but one, of the essential elements of the combination. The thing patented is one, single and entire. It is the combination of all the essential elements into the entire new converter which the combination produces. No one can infringe this claim of the patent who does not appropriate this entire new combination and this machine which that combination produces. And as this new combination and the converter it produces accomplished a result never attained before, a result that no known device or combination open to the public while the infringement here in controversy was continuing would produce, this case is not governed by the rule applicable to slight improvements on old machines which accomplished the same result before as after the patented improvement, illustrated by Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, and other cases of that class; but the complainant is entitled to all the profits which the infringer derived from the appropriation of the new combination and machine. Brennan & Company v. Dowagiac Mfg. Company, 162 Fed. 472, 475, 89 C. C. A. 392; Yesbera v. Hardesty Mfg. Co. (C. C. A.) 166 Fed. 120, 125, and cases of that class cited above.

It appears to me, therefore, that the complainant was the owner of all the profits which the defendant derived from the manufacture and sale of the infringing converter, and that the defendant was in equity a trustee of those profits for the complainant. The Supreme Court declares that it is the established rule of the nation that in a case of this nature a court of equity will administer full relief by awarding "a compensation computed and measured by the same rule that courts of equity apply to the case of a trustee who has wrongfully used the trust property to his own advantage." Tilghman v. Proctor, 125 U. S. 136, 148, 8 Sup. Ct. 894, 31 L. Ed. 664. What is that rule? Chancellor Kent stated it in Hart v. Ten Eyck, 2 Johns. Ch. (N. Y.) 62, 108, in these words:

"The rule of law and equity is strict and severe on such occasions. If a party, having charge of the property of others, so confuse it with his own that the line of distinction cannot be traced, all the inconvenience of the confusion is thrown upon the party who produces it, and it is for him to distinguish his own property or lose it."

The Supreme Court approved this statement of the rule in The Idaho, 93 U. S. 575, 576, 23 L. Ed. 978.

The primary duty of a trustee is to keep the property of his cestui que trust separate from his own, to keep an account of it, and to deliver it to the cestui que trust. This infringer kept no account of these profits, but mingled them with the profits of its general business, so that it was impossible for it, or for any one, to accurately separate them.

But the record contains persuasive evidence of the entire amount which the defendant received from the sale of the infringing converters, and that it customarily added to the cost of manufacture and sale a profit of 25 per cent. to make up its selling price. There is also persuasive evidence of the total amount received by the defendant from all its business during its infringing years and of the total profits derived from its business during these years. These are ample facts upon which to base a just and equitable finding of the amount of profits which the defendant derived from the sale of these infringing machines. The master has made a finding after a careful consideration of all the evidence upon the subject, and that finding is presumptively right. The indisputable facts that for years the defendant continued to infringe, until it had made and sold infringing machines from which it realized more than $800,000, are sufficient to satisfy the mind that its appropriation of the complainant's combination was profitable, and when to this is added the evidence that 25 per cent. of the cost was ordinarily added by it to make its selling price, it seems to me to be inequitable to permit the defendant to keep this property of the complainant, because it mingled it with its own, and thus allow it to take advantage of its own wrong. Of such a defense Lord Chancellor Brougham said in Docker v. Somes, 2 Myl. & Keene, 674:

"When did a court of justice, whether administered according to the rules of equity or law, ever listen to a wrongdoer's argument to stay the arm of justice grounded on the steps he himself had successfully taken to prevent his iniquity from being traced? Rather, let me ask, when did any wrongdoer ever yet possess the hardihood to plead, in aid of his escape from justice, the extreme difficulties he had contrived to throw in the way of pursuit and detection, saying: 'You had better not make the attempt, for you will find I have made the search very troublesome?' The answer is: 'The court will try.' "

The defendant cites again the cases of Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, Seymour v. McCormick, 57 U. S. 480, 14 L. Ed. 1024, and Keystone Mfg. Co. v. Adams, 151 U. S. 139, 14 Sup. Ct. 295, 38 L. Ed. 103, in defense of its course; but they are inapplicable, because in such cases of slight improvements on operative machines it is often impossible for the infringer to know the portion of the profit attributable to the improvement, and hence its duty to keep that part separate is not so imperative. But where, as in the case in hand, the complainant is entitled to the entire profits from the infringing devices of the defendant, the duty is imperative, and the failure to discharge it, or the failure to distinguish subsequently such profits from its own, subjects, and ought to subject, the infringer, and not its victim, to any unavoidable loss that results from the inaccuracy either of the defendant's disclosure of its profits or of the complainant's proof, when there is any substantial evidence upon which to base an estimate of the profits derived from the infringing devices.

In like cases, upon evidence similar, but far less accurate and convincing than that in this record, infringers have been refused permission to take advantage of their own wrong, and have been required to pay the estimated profits they derived from the infringing devices by the Circuit Court of Appeals of the Sixth Circuit in Brennan & Company v. Dowagiac Mfg. Company, 89 C. C. A. 392, 396, 162 Fed.

472, 476, Dowagiac Mfg. Company v. Superior Drill Company, 89 C. C. A. 399, 400, 162 Fed. 479, 480, and P. P. Mast & Company v. Superior Drill Company, 154 Fed. 45, 57, 83 C. C. A. 157, and by the Circuit Court of Appeals in the Second Circuit in Wales v. Waterbury Mfg. Co., 101 Fed. 126, 130, 41 C. C. A. 250, 253, 254, and I am of the opinion that this court ought to pursue the same course in the case before us.

For the reasons which have been stated, I am unable to concur in the view of the majority that the decree of the court below should be affirmed; and I think it should be reversed, and a decree should be rendered for the complainant.